majority of the court then determined that the plaintiff was entitled to recover the contract price, less the cost of fulfilling on his part and the profit which he realized on the sale of the 300 tons of beams which the defendant refused to take, and the judgment was reversed and a new trial ordered only because it appeared that the verdict for $900 was too large, in that no allowance had been made for the cost of delivery. This was the law of the case, and the trial judge correctly instructed the jury in this respect. The jury disregarded such instructions, and rendered a verdict for the plaintiff for $1,260—the difference between the contract price and what it would have cost him to have carried out the same, irrespective of the profits realized; and for this reason the motion to set aside the verdict and for a new trial should have been granted.

The Appellate Term overlooked what the majority of this court had determined as to the measure of damage, and held that the instruction of the trial judge was erroneous, but that it did not harm the defendant, since the proper measure of damage was adopted by the jury. On the last trial the defendant objected to the admission of evidence as to the sale of the beams at Antwerp and the price realized therefor. It did, however, appear that the duty on the 300 tons of beams would have been $3,000; the freight from Antwerp to New York, $646; that the manufacturer received $7,086.50 for the beams at Antwerp, making in all $10,732.50 which it would have cost the plaintiff to deliver the beams in New York. The plaintiff, therefore, is clearly entitled upon this record to recover the difference between this sum and the contract price, or $367.50. This computation is by no means accurate; the evidence being very unsatisfactory. It does not clearly appear what profits the plaintiff realized on the sale; but the defendant is not in a position to complain, not only because it offered no proof on that subject, but also because of the position which it took with reference thereto at the trial.

It follows that the determination of the Appellate Term and the judgment of the City Court must be reversed, and a new trial ordered, unless the plaintiff stipulates to reduce the judgment to $367.50, and, if such stipulation be given, then the judgment is affirmed, without costs to either party on this appeal. All concur, except LAUGHLIN, J., who dissents.

---

MAIRS v. BALTIMORE & O. R. CO.

(Supreme Court, Appellate Division, First Department. June 4, 1909.)

CARRIERS (§ 83*) — CARRIAGE OF GOODS — ACTION FOR WRONGFUL DELIVERY — PROXIMATE CAUSE.

A carrier was not liable, under Pen. Code, § 633, making it a misdemeanor for a common carrier to deliver goods, without the surrender or cancellation of the bill of lading, to a bona fide holder of bills of lading, indorsed to him by the consignee, who had fraudulently altered them so as to be negotiable, for delivering the goods to the consignee without requiring the surrender of the bills of lading though one of them was delivered to plaintiff before the goods were delivered to the consignee; the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

forgery being the proximate cause of plaintiff's damage, as the bills of lading would not have been negotiated, had they not been forged.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 83.*]

Scott, J., dissenting in part.

Appeal from Trial Term, New York County.

Action by Edwin H. Mairs against the Baltimore & Ohio Railroad Company. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, McLAUGHLIN, HOUGHTON, CLARKE, and SCOTT, JJ.

George W. Field, for appellant.
Howard E. White, for respondent.

McLAUGHLIN, J.   Action to recover damages alleged to have been sustained by reason of the delivery by the defendant to the consignee of a quantity of corn meal without the surrender of the bills of lading under which the same was shipped. Two causes of action are set out in the complaint. The first is to the effect that the plaintiff, on the 21st of December, 1896, became the owner of 200 barrels of corn meal, of the value of $420, for which a bill of lading had been originally issued to one Day, and by him, for value, indorsed and transferred to the plaintiff, and that thereafter, and before July 1, 1897, the defendant wrongfully and unlawfully converted the same, to the plaintiff's damage of $420. The second is that on December 30, 1896, plaintiff became the owner of 1,100 barrels of corn meal, of the value of $2,310, for which bills of lading had been issued originally to Day, and by him, for value, indorsed and transferred to the plaintiff, and between December 30, 1896, and July 1, 1897, defendant unlawfully converted the same to its own use, to plaintiff's damage in the sum of $2,310. The answer is a general denial, together with certain affirmative defenses —among others, one that the bills of lading referred to in the complaint were issued as "straight" and not as "order" bills, and after their issuance they were altered by placing the words "order of and notify" before the name of Day, the consignee; also one that section 633 of the Penal Code, which makes it a misdemeanor for a common carrier to deliver merchandise without the surrender or cancellation of the bill of lading, is, in so far as it attempts to regulate interstate commerce, a violation of the Constitution and statutes of the United States.

There is little dispute as to the facts. From December 10, to 15, 1896, the Sagamore Milling Company delivered to the Norfolk & Western Railroad Company, at Circleville, Ohio, a quantity of corn meal, consigned to one James S. Day, of New York City, and for which the railroad company issued seven separate nonnegotiable bills of lading, without the words "not negotiable" written upon their face. The meal was conveyed over the company's line to its intersection with the defendant railroad, and was then by that company transported to the city of New York. Thereafter the consignee, Day, indorsed the bills of lading in blank and delivered the same to the plaintiff as col-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

lateral security for the payment of a loan then or previously made. At the time of the delivery of these bills to the plaintiff, each of them had been altered by the insertion of the words "order of and notify" immediately preceding the name of the consignee, thus changing them into negotiable instruments. This change was made without the knowledge or consent of the Norfolk & Western Railroad Company or of the defendant. Each of the bills contained the following provision:

"If the word 'order' is written hereon immediately before or after the name of the party to whose order the property is consigned, without any condition or limitation other than the name of a party to be notified of the arrival of the property, the surrender of this bill of lading, properly indorsed, shall be required before the delivery of the property at destination. If any other than the aforesaid form of consignment is used hereon, the said property may, at the option of the carrier, be delivered without requiring the production or surrender of this bill of lading."

Originally the words "order of and notify" had been part of a rubber stamp used by the Norfolk & Western Railroad Company in making shipments to Day, but before the shipments in question were made these words had been cut off the stamp at his request. The shipper understood the terms of the bills of lading, and knew that the same were contracts to the effect that the railroad company might, at its option, deliver the corn to the consignee without requiring their production. Plaintiff had been doing business with Day for some 10 or 12 years prior to the transactions in question, and had frequently made loans to him upon bills of lading of the character of those here involved. The method adopted was for Day to bring in the bills of lading, with draft attached, to the plaintiff, who would pay the amount of the draft and take the bills in exchange. Then, when Day disposed of the corn meal, he would pay plaintiff the amount advanced. At times he would accommodate Day by allowing him to substitute one bill for another, and when this was done the bills of lading would come into his hands without the draft, at some time other than when Day first received them. The bill of lading upon which is predicated the first cause of action was a substituted bill. Just when this was received by plaintiff does not appear. The others, according to his testimony, were received by him on the 30th of December, 1896. The plaintiff ceased doing business with Day in September, 1897, and there then remained due him upwards of $5,000, upon which Day made certain payments; but after such payments he was indebted to the plaintiff, on account of the moneys advanced on the bills in question, for over $2,000. He did nothing, however, with such bills until some time during the summer of 1898, when he demanded the meal from the defendant, and was then informed that the same had been previously delivered to Day, and he thereupon brought this action to recover the damages alleged to have been sustained by him by reason of such delivery. At the conclusion of the trial the court directed a verdict for the plaintiff for the amount claimed, and from the judgment entered thereon, and an order denying a motion for a new trial, defendant appeals.

The decision of the Court of Appeals in Mairs v. Baltimore & Ohio R. Co., 175 N. Y. 409, 67 N. E. 901, seems to me to be decisive of the

question presented, and necessitates a reversal of the judgment appealed from. There the court had under consideration a bill of lading in all respects similar to the ones here under consideration, and it held that the plaintiff was not entitled to recover. Judge Haight, speaking for the entire court, after referring to the statute under which it was sought to make the defendant liable (section 633 of the Penal Code) said:

"There, however, can be no recovery, unless damages to the plaintiff resulted from the illegal act. Where the Legislature prohibits or requires the doing of an act, and prescribes a punishment that shall be inflicted for a violation of its mandate, the punishment furnishes the exclusive remedy for the wrong, so far as the public is concerned, and the act cannot be made the basis of a civil action by an individual for the recovery of damages, unless he has been injured in his person or property and the damages suffered are the direct and proximate result of the illegal act. In this case the defendants negligently omitted to take up the bill of lading when they delivered the goods upon the order of the consignee. The bill of lading did not have the words 'not negotiable' indorsed upon its face, and therefore the defendants may be technically guilty of a violation of the statute; but the bill of lading in fact was 'not negotiable,' and under the law merchant the defendants would not have been required to take up the bill, had it not been for the provision of the statute. The plaintiff, as we have seen, was a member of the New York Stock Exchange, and had for a number of years dealt with bills of lading, and knew the difference between a negotiable and nonnegotiable bill. He knew that the property could be delivered to the consignee without the surrender of a nonnegotiable bill, and admits that he carefully scrutinized the bills of lading brought in by Day, the consignee. It is therefore apparent that the plaintiff could not have been induced to part with any property or make loans upon this bill of lading, had it remained in the form in which it was originally executed. He was induced to take it for the reason that it appeared to be negotiable. He was deceived by reason of the forgery, and for this the defendants were not responsible. The forgery was not the direct or proximate result of the omission to take up the bill of lading, but was the independent and felonious act of another person. For this reason we think the plaintiff cannot recover. These views render it unnecessary to consider the question as to whether the provisions of the Penal Code are violative of the interstate commerce clause of the Constitution of the United States."

It is sought to distinguish that case from the one now before us upon the ground that it there appeared that the meal was delivered to Day before the bill of lading was delivered to the plaintiff, while here it is claimed the bills of lading were delivered first. It is true there is this difference between the two cases, except as to the first cause of action set out in the complaint, and as to that the question presented is precisely like the one which was considered by the Court of Appeals. The record does not show that this bill of lading was delivered to the plaintiff before the meal called for by it had actually been delivered to Day. But I do not think this makes any difference. The basis of the decision of the Court of Appeals, as I read the opinion, is that the forgery, and not the deliveries to Day, was the direct and proximate cause of the plaintiff's damage, and for that defendant is not liable.

The case of Colgate v. Pennsylvania Co., 102 N. Y. 120, 6 N. E. 114, upon which the plaintiff relies, is in no way in conflict with the foregoing views. The recovery in that case is predicated upon the fact that the damages sustained were the direct result of the failure of the defendant to comply with the statute. The bill of lading, when

negotiated, was in precisely the same form that it was when delivered by the carrier, and obedience to the statute would have prevented the injury which there happened, while here the bills would not have been negotiated had not Day forged the words "order of and notify" upon each of them. With the addition of these words the carrier had nothing to do. The act placing them upon the bills was a forgery, and such act alone, and not defendant's omission to comply with the statute, induced the plaintiff to take them.

It follows that the judgment and order appealed from must be reversed, and a new trial ordered, with costs to appellant to abide event.

INGRAHAM, CLARKE, and HOUGHTON, JJ., concur. SCOTT, J., dissents as to second cause of action.