# CHARLESTON.

OLD NATIONAL BANK OF WAUPACA *v.* PEOPLES BANK OF HARRISVILLE.

Submitted September 20, 1921.    Decided September 27, 1921.

1.   CARRIERS—*One Discounting Sight Draft and Receiving Therewith Bill of Lading Acquires Special Property in the Goods to Secure the Draft.*

A party discounting a sight draft and receiving therewith a bill of lading for the goods, against the purchase price of which the draft is drawn, acquires a special property in such goods, and has a complete right to have them held as security for the payment of the draft.   (p. 135).

2.  SAME—*Bank Discounting Draft with Bill of Lading is Not Answerable for Consignor's Performance, in Absence of Bad Faith.*

A bank which discounts a draft with bill of lading attached is not, in the absence of bad faith, answerable to the drawee for the performance of the consignor's contract.   (p. 136).

3.  SAME—*Buyer Waiving Inspection, Upon Later Rejecting Goods, May Not Recover From Assignee of Draft with Bill of Lading Attached.*

A consignee of goods, who is required to pay for the same before delivery, is entitled to inspect the goods before receiving the same and paying therefor.   He may waive this right, however, by paying for the goods and receiving them before such inspection, and in case he does so he cannot, upon later deciding to reject the goods, require repayment of his money to him from a bank who is the assignee in good faith of a draft for the purchase money with bill of lading attached. His remedy, after paying the draft and receiving the goods, is an action against the seller for damages.   (p. 135).

4.  BANKS AND BANKING—*Correspondent Bank, May Not Deliver Bill of Lading to Consignee on Payment of Attached Draft on Condition of Repayment on Rejection Unless so Authorised by Assignee Bank.*

A bank which discounts a sight draft for the purchase price of goods, with a bill of lading attached, is entitled to recover the amount of such draft from a correspondent bank to which it is sent for collection, where it is shown that such correspondent bank delivers such draft and bill of lading to the consignee upon deposit with it of the amount of the draft who, in turn surrenders such bill of lading to the carrier and receives the goods, even though it appear that the correspondent bank delivered the bill of lading with the understanding that the consignee might have his money back if he determined to reject the goods.   Such correspondent bank has no authority to deliver such bill of lading upon such conditions, unless it is specifically authorized to do so by the assignee bank.   (p. 136).

Error to Circuit Court, Ritchie County.

Action by the Old National Bank of Waupaca against the People's Bank of Harrisville.   Directed verdict for defendant, and judgment of nil capiat, and plaintiff brings error.

*Reversed and remanded.*

89 W. Va.

*Merrick & Smith,* for plaintiff in error.

*Adams & Cooper* and *S. O. Prunty,* for defendant in error.

RITZ, PRESIDENT:

The plaintiff brought this suit for the purpose of recovering the amount of a draft drawn by Leonard, Crossett & Riley upon R. C. Marshall, to which was attached a bill of lading for a carload of potatoes, which draft had been endorsed, together with the bill of lading, to the plaintiff, and by it sent to the defendant for collection.    A trial in the court below resulted in a directed verdict in favor of the defendant, and a judgment of *nil capiat* thereon, to review which this writ of error is prosecuted.

The facts out of which this controversy grew are that on the 4th day of October, 1918, Leonard, Crossett & Riley, pursuant to an order received by them from R. C. Marshall, shipped from Waupaca, Wisconsin, a car load of potatoes to Cairo, West Virginia, consigned to their own order, with instructions to notify R. C. Marshall, and at the time of shipment of this carload of potatoes received from the carrier a bill of lading showing the consignment aforesaid.    On the 7th of October Leonard, Crossett & Riley drew a sight draft on the said R. C. Marshall for the sum of $856.64, the purchase price of the potatoes, and attached to this draft the said bill of lading.    This draft, with the bill of lading attached was transferred or assigned to the plaintiff bank upon full payment therefor, and it forwarded the same, with the bill of lading attached, through the Marine Bank of Milwaukee, Wisconsin, to the defendant bank at Harrisville for collection.    Not having received a remittance from the defendant bank to cover this draft the plaintiff bank, on the 24th day of October, telegraphed to the defendant stating that it was advised that the draft had been paid, and requested that the amount be remitted.    To this telegram the defendant replied by a letter dated the 24th day of October, in which it made a statement at some length as to the facts as represented to it.    It advised the plaintiff bank that upon the arrival of the carload of potatoes at Cairo Mr. Marshall telephoned to it that the railroad agent would not permit in-

spection except upon production of the bill of lading, and that
he, Marshall, accordingly remitted to it the amount of the
draft, and had the bill of lading forwarded to him by mail,
together with the draft, in order that he might inspect the
potatoes; that after inspecting them he returned the draft
with a letter dated October 15th, stating that the potatoes
were refused for the reason that the same were not satisfac-
tory.   The railroad agent declined to return the bill of lad-
ing, it having been surrendered to the carrier by Marshall, so
that he was unable to return it to the bank.   The defendant
advised that under the circumstances it had decided to keep
the money which was in its possession until the rights of the
parties thereto were determined   by a court of competent
jurisdiction, and this suit resulted.   What became of the
carload of potatoes does not appear.   As to whether or not
the potatoes were of inferior quality, and were for that reason
rejected does not appear in the record except from state-
ments contained in the letter from the cashier of the defend-
ant to the plaintiff, and these statements purport to be made
by him upon information derived from the purchaser and the
county food administrator, and the rejection of the potatoes
appears only in the same way.   The court below, however,
evidently treated this as proof, and the parties upon this hear-
ing likewise considered these facts as sufficiently proven by
the introduction of the aforesaid letter by the plaintiff.   The
question thus presented is purely one of law.

· It is very well established that where the consignor of
goods discounts a sight draft representing the purchase price
thereof, to which draft is attached a bill of lading, the holder
of this draft has a property in the goods, and is entitled to
have the same held by the carrier until he surrenders the bill
of lading.   *Neill & Ellingham* v. *Produce Co.*, 41 W. Va. 37.
The bill of lading is in the nature of a muniment of title, the
holder of it being entitled to demand possession of the goods
shipped when they reach their destination, and the carrier be-
ing relieved of liability on account of the carriage of said goods
when it delivers the same to the holder of such bill of lading.
That Marshall had a right to inspect these goods before receiv-
ing them is true.   The bill of lading provided for this inspec-

tion, and whether it did or not he would be entitled to make it before receiving the goods.    10 C. J. 253.    The railroad company did not have the right to require the surrender of this bill of lading before permitting inspection of the goods.    It might be proper for the carrier's agent to require that the bank holding the bill of lading direct him to permit inspection simply for the purpose of knowing that the party making such inspection was authorized thereto by the holder of the bill of lading.    The defendant bank, when it received this draft was acting as an agent of the plaintiff. Its authority in the premises was limited to collecting the draft and delivering it with the bill of lading attached to Marshall, or returning it with the bill of lading attached upon refusal of the purchaser to pay the same.    It could not deliver the bill of lading to him upon any conditions or under any agreement that it should be returned and the money repaid should he thereafter be dissatisfied with the goods.    To hold that Marshall could pay this draft as he did, and upon discovering that the goods did not comply with the seller's warranty demand his money back would be in effect holding that the assignee of the draft with the bill of lading attached was liable to answer for the quality of the goods, while it is held with practical uniformity in this country that under such circumstances the purchaser's remedy is against the seller, and the assignee of the draft with the bill of lading attached cannot be held for a failure in quality or a breach of warranty.    *Cosmos Cotton Co.* v. *First National Bank of Birmingham,* 171 Ala. 392, 54 So. 621, 32 L. R. A. (N. S.) 1173; *Central Mercantile Co.* v. *Oklahoma State Bank,* 83 Kan. 504, 112 Pac. 114, 33 L. R. A. (N. S.) 954; *Hawkins* v. *Alfalfa Products Co.,* 152 Ky. 152, 153 S. W. 201, 44 L. R. A. (N. S.) 600; *Springs* v. *Hanover National Bank,* 209 N. Y. 224, 103 N. E. 156, 52 L. R. A. (N. S.) 241.    These authorities clearly establish the doctrine in this country that the bank which discounts a draft with a bill of lading attached is not, in the absence of bad faith on its part, answerable to the drawee for the performance by the assignor of the contract.    It is quite true, as before stated, that Marshall was entitled to inspect these goods before receiving them.    This is a right, however,

that he was not required to exercise. He could pay the draft and take up the bill of lading if he desired and rely upon the seller's warranty to protect him.   This right of inspection he must exercise seasonably.   He could not pay off the draft and deliver the bill of lading to the carrier, and then demand his money back upon finding that the goods did not meet his expectations.   When the defendant bank delivered the bill of lading to him it passed the title  to the goods, and the title to the money passed to the plaintiff bank, and when Marshall delivered this draft to the carrier's agent and accepted the carload of goods he cannot be said to have accepted it for any qualified purpose, for by delivering the bill of lading to the carrier he discharged the carrier of liability in connection with the carriage of the shipment, and received to himself not only the title, but the possession of the property.   When a bank receives a draft with a bill of lading attached, as did the defendant bank in this case, it makes itself liable to the owner of the draft if it delivers the bill of lading to the assignee without requiring payment of the draft; and, likewise, if it does require such payment before delivery of the bill of lading it cannot withhold the money it thus collects from the party for whom it undertook to collect it.   The stability of commercial transactions of this character requires that the rights of the parties thereto be definitely and certainly fixed at each stage of the proceeding, and not dependent on any whim or caprice of either party. Every act done must have attached to it a definite and certain meaning and effect, regardless of what may have been the intention of either party.   When Marshall, upon the refusal of the railway company's agent to permit him to examine the goods, paid this draft and surrendered the bill of lading to the carrier's agent, he became vested with the full title in the property.   He waived his right to have an inspection of the goods before acceptance, and he cannot after having waived the same subsequently rely upon it.   The doctrine of the liability of a bank, standing in the position of the defendant in this case, to the holder of a draft, for an unauthorized delivery of a bill of lading attached thereto, is fully recognized by the authorities.   Michie on Banks & Banking, § 161, p.

1401; *Gulf, Colorado & Santa Fe Ry. Co.* v. *North Texas Grain Co.,* 32 Tex. Civil App. 93; *Bank* v. *Cummings,* 89 Tenn. 609; *Hobbs & Tucker* v. *Chicago Packing & Provision Co.,* 98 Ga. 576. We are of opinion that the money now in the possession of the defendant bank is the property of the plaintiff, and that it had the right to maintain this suit to recover the same upon refusal of the defendant to pay it over.

The judgment of the circuit court is therefore reversed, the verdict of the jury set aside, and the cause remanded for a new trial.

*Reversed and remanded.*