Chandler Motor Car Company, Plaintiff, *v.* United Fruit Company, Defendant.

Supreme Court, New York County, June 17, 1926.

Sales — action by plaintiff for conversion of three automobiles sold to trading company under contract " f. o. b. steamer N. Y." for " cash against clean dock receipt "— plaintiff delivered automobiles to defendant carrier and received dock receipt authorizing carrier to issue regular bill of lading for goods to trading company — title to property passed to trading company on delivery of goods to carrier — plaintiff cannot recover where it caused issuance of dock receipt straight for account of trading company — provisions of Penal Law, § 365, not applicable — Federal Bills of Lading Act, §§ 6, 9 (39 U. S. Stat. at Large, 538, chap. 415), applied.

Plaintiff, having contracted with a trading company to sell to it three automobiles " f. o. b. steamer N. Y." for " cash against clean dock receipt," and having delivered the shipment to defendant carrier, taking from it a dock receipt reciting in effect that the carrier had received from the trading company for the latter's account " as the shipper * * * the following number of articles * * * for shipment * * * The United Fruit Company's regular bill of lading in use by it for similar shipments * * * shall be issued for said goods to the above named shipper," has no action for conversion against the defendant for the delivery of the automobiles to a consignee of the trading company in Guayaquil, since, having caused the issuance of the dock receipt straight for the account of the trading company, the carrier was justified in making delivery to it, particularly where under the terms of the contract title to the property passed to the trading company upon delivery to the carrier.

Nor may the provisions of section 365 of the Penal Law, to the effect that the representative of the carrier who delivers merchandise for which a receipt has been issued (unless such receipt is marked " not negotiable " or unless such receipt is surrendered for cancellation at the time of such delivery), is guilty of a crime, be imported into the contract in order to enforce civil liability against the carrier, since the dock receipt was neither surrendered nor marked " not negotiable."

The proximate cause of plaintiff's loss was not defendant's failure to take up the dock receipt, but rather plaintiff's own conduct in taking a dock receipt straight

to the buyer which specifically authorized the carrier to deliver a straight bill of lading to the buyer.

The shipment being an interstate shipment is governed by the provisions of the Federal Bills of Lading Act (39 U. S. Stat. at Large, 538, chap. 415). But section 6 of said act is inapplicable since it has no reference to memoranda or acknowledgments of an informal character, such as a dock receipt. Section 9, however, justified the carrier in making delivery of the goods to the trading company, since said delivery was made to a person lawfully entitled to possession.

ACTION by seller against carrier for conversion of automobiles.

*Whitbeck & Griffin* [*Solomon C. Whitbeck* of counsel], for the plaintiff.

*W. D. Williams*, for the defendant.

PROSKAUER, J.  Plaintiff contracted to sell and the Republic Trading Company to buy three Chandler touring cars Nos. " 3083 3084 3085 Price:— $1364.00 net each car f. o. b. steamer N. Y. * * *  Delivery:— as above   Payment:— cash against clean dock receipt."  On August 22, 1919, plaintiff delivered the three automobiles to defendant, taking from defendant a dock receipt reading: " Received at Pier 9 from Republic Trading Company for account of Republic Trading Co. as the shipper * * * the following number of articles * * * for shipment * * * The United Fruit Company's regular bill of lading in use by it for similar shipments * * * shall be issued for said goods to the above named shipper."  Thereafter plaintiff, in accordance with the contract, presented the dock receipt to the Republic Trading Company for payment which was refused.  The automobiles were thereafter delivered by defendant to the consignee of the Republic Trading Company in Guayaquil.  Plaintiff now sues defendant for conversion of these automobiles.

Title to this property, as between seller and buyer, passed upon delivery to the carrier.

"As it is a necessary implication in F. O. B. contracts that the buyer is to be at all expense in regard to the goods after the time when they are delivered free on board, the presumption follows that the property passes to the buyer at that time, * * *.  The general rule, however, must be qualified by two possibilities; the first relating to the form of the bill of lading and the second to the other terms of the contract."  (1 Williston Sales [2d ed.], 602.)

Nothing in this contract indicates an inconsistent intent.  As the sale was of specific automobiles, title is presumed to pass at once, notwithstanding that payment was delayed.  (Pers. Prop. Law, § 100, rule 2, as added by Laws of 1911, chap. 571.)

Nor did the retention of the dock receipt by the seller change this

situation. Assuming (without deciding) that this dock receipt was in legal effect as potent as a bill of lading, it was at most the equivalent only of a straight (not an order) bill of lading.

Section 101 of the Personal Property Law (as added by Laws of 1911, chap. 571) and section 226 of the same statute (as added by Laws of 1911, chap. 248) provide in substance that where by the bill of lading the goods are deliverable to the seller or to the order of the seller or the buyer, the seller reserves a right to possession of, or security title in, the goods as against the buyer. They relate only to order bills and to straight bills naming the seller as consignee. If the bill is to the buyer as consignee, the seller has parted both with title and possession for the reason stated in 1 Williston on Sales ([2d ed.] § 285): " If the bill is a straight bill, that is, if the goods are by its terms deliverable not to the order of the consignee but to the consignee simply, the railroad is unquestionably fulfilling its contract in delivering to the consignee so named. On the other hand, if, by the terms of the bill, the goods are to be delivered to the order of a person named, it cannot with certainty be determined who corresponds to this description unless the bill of lading itself is presented. By mercantile usage the word ' order,' as used in a bill of lading, means, as it does in a promissory note, an order written on the bill of lading itself by the indorsement of the person named on the face." (See *Edelstone* v. *Schimmel*, 233 Mass. 45; 123 N. E. 333; *Duholm* v. *Chicago, M. & St. Paul R. Co.*, 146 Minn. 1; 177 N. W. 772.)

Plaintiff caused the issuance of this dock receipt straight for the account of the buyer. The carrier was justified in delivering to the buyer, both by the terms of the dock receipt and also because the buyer was the owner of the goods.

Nor does section 365 of the Penal Law aid plaintiff. It provides that the representative of a carrier who delivers merchandise for which a receipt has been issued (unless such receipt is marked " not negotiable," or unless such receipt is surrendered for cancellation at the time of such delivery) is guilty of a crime. Plaintiff contends that these provisions are imported in the contract and that, since the dock receipt was neither marked " not negotiable " nor surrendered, the defendant became civilly liable. (*Colgate* v. *Pennsylvania Co.*, 102 N. Y. 120.) In that case a carrier, delivering goods without requiring the surrender of a straight bill of lading (not marked " non-negotiable "), was held liable to an innocent purchaser of the bill of lading from the consignee. Subsequent cases, however, make clear that plaintiff cannot recover unless the carrier's failure to take up the bill was the proximate cause of the loss. (*Mairs* v. *B. & O. R. R. Co.*, 175 N. Y. 409; 132 App. Div. 652;

*Saugerties Bank* v. *Delaware & Hudson Co.*, 236 N. Y. 425; *Burnham* v. *C. V. S. Co.*, 142 id. 169.) The loss is proximately caused by the failure to take up the bill only if it would not have occurred had the carrier done so. As stated by Mr. Justice BRANDEIS in *Pere Marquette R. Co.* v. *French & Co.* (254 U. S. 538, 547): " The failure of the carrier to require production and surrender of the bill of lading did not cause the loss. The same loss would have resulted if the bill had been presented and surrendered."

So, in the case at bar, had the carrier required production of the dock receipt by the seller before issuance of the bill of lading, the seller would have gotten a " straight " bill naming the buyer as consignee, which document would have given it not even a right to possession of the goods.

In *Nelson Grain Co.* v. *Ann Arbor R. Co.* (174 Mich. 80) plaintiff sold beans to Botsford & Barrett and delivered them to defendant for an order bill of lading reading: " Received  *  *  *  from owners the property described below  *  *  *. Consigned to order of Botsford & Barrett." It further provided that " The surrender of this original order bill of lading, properly indorsed, shall be required before the delivery of the property." Plaintiff drew on Botsford & Barrett and transmitted the draft with bill of lading attached to a bank for collection. Payment was refused, the documents were returned and the bill of lading was never out of plaintiff's possession. The buyers secured possession of the beans on a forged bill of lading. BROOKE, J., said: " Being the owner of the property at the time of delivery to the carrier, plaintiff chose to represent by the contract negotiated with the carrier that Botsford & Barrett were the shippers thereof, to whose order delivery should be made, at the same time neglecting to disclose to the carrier that it (the plaintiff) desired or intended to retain any control over the shipment for its own protection.  *  *  *  We cannot escape the conclusion that this loss has come to plaintiff  *  *  *  by reason of its own carelessness in failing to make the shipments to its own order, or in some other manner notifying the defendant that it desired to retain its title to the shipments until paid for the same."

And in *St. Louis S. W. Ry.* v. *Gilbreath* (144 S. W. [Tex. Civ. App. 1912] 1051) a plaintiff delivered goods to defendant upon a bill of lading reading " Received from Jackson, Bell & Co. by the St. Louis Southwestern Railway Company of Texas; consigned to shipper's order," and providing for surrender of the bill before delivery of the goods. Plaintiff intended to but never did sell the goods to Jackson, Bell & Co. Defendant successfully resisted an action for conversion. LEVY, J., said (at p. 1053):

" Not being in the attitude here towards the railway company of a consignor or real shipper in the facts, the [shipper] could not, therefore, as against the railway company, predicate a claim by or through himself as owner of the cotton. His rights of ownership as against Jackson, Bell & Co. would not be, as against the railway company, greater than the contract of carriage he assented to. * * * By the terms of carriage so made, as evidenced by the bill of lading, and which must determine the rights and liabilities of the parties here, the thing which the railway company must be considered as having undertaken, * * * was to transport the cotton received * * * from Jackson, Bell & Co. * * * and * * * deliver it to their order. * * * The reason why the railway company is bound to deliver to the transferee the bill of lading in a shipper's order lies in the fact that such transferee properly becomes the consignee, and this is evidenced by and under the bill of lading produced. In the absence of such order by Jackson, Bell & Co., in this instance, they, and they only, were in the facts here the consignees; and, the shipment being properly delivered to them at the time, the bill of lading thereafter became of no force or value as against the railway company."

The New York decisions contain nothing inconsistent with this reasoning. In *Colgate* v. *Pennsylvania Co.* (102 N. Y. 120, 125), FINCH, J., said: " By producing the bills of lading which were indorsed over to them by the consignee, they had a right to call upon the carrier for the property." In the only other cases where plaintiff prevailed, the shipper had retained possession of an order bill (*Canandaigua Nat. Bank* v. *So. R. Co.*, 64 Misc. 327; *Sheldon* v. *N. Y. Central & H. R. R. R. Co.*, 61 id. 274; *First Nat. Bank* v. *N. Y. Central & H. R. R. R. Co.*, 85 Hun, 160), thereby retaining security title or lien on the goods. The proximate cause of this plaintiff's loss was not defendant's failure to take up the dock receipt; it was plaintiff's own conduct in taking a dock receipt straight to buyer which specifically authorized the carrier to deliver a straight bill of lading to buyer.

Moreover this was an interstate shipment. It is, therefore, governed by the Federal Bills of Lading Act known as the Pomerene Act. (39 U. S. Stat. at Large, 538, chap. 415.) (*Miller* v. *N. Y. Central R. R. Co.*, 205 App. Div. 663, 668.) Section 6 of that act (Id. 539) provides " That a straight bill shall have placed plainly upon its face by the carrier issuing it ' nonnegotiable ' or ' not negotiable.' This section shall not apply, however, to memoranda or acknowledgments of an informal character." Under this section, a dock receipt obviously is not a negotiable document of title. Section 9 of the act (Id. 540) provides " That a carrier is justified

\* \* \* in delivering goods to one who is — (a) A person lawfully entitled to the possession of the goods, or (b) The consignee named in a straight bill for the goods \* \* \*." (*Pere Marquette R. Co. v. French & Co.,* 254 U. S. 538.) Obviously subdivision (a) refers to the person lawfully entitled to possession as between the adverse claimants. Section 365 of the Penal Law, if applicable at all (*Miller v. N. Y. Central R. R. Co., supra*), merely defines the rights as between carrier and claimant, and, therefore, cannot be considered in determining the "person lawfully entitled to the possession" under subdivision (a) of section 9 of the act. Since, therefore, the carrier in fact delivered the goods to the person lawfully entitled to possession, plaintiff cannot recover.

Verdict directed for defendant, with exception to plaintiff. Thirty days' stay; sixty days to make a case.