## ABILENE STORAGE CO. v. EUGENE FRUIT GROWERS' ASS'N.

### No. 2337.

Court of Civil Appeals of Texas. Eastland.

March 19, 1943.

Rawlings, Sayers & Scurlock, of Fort Worth, for appellant.

Scarborough, Yates & Scarborough, of Abilene, for appellee.

LESLIE, Chief Justice.

This is an appeal from an order overruling plea of privilege filed by W. A. Johnson, doing business under the assumed name of Abilene Storage Company. The Eugene Fruit Growers' Association of Eugene, Oregon, instituted the main suit, alleging that it shipped 700 cases of beans to the Piggly Wiggly stores of Abilene. That 350 of the cases were later returned to it, but the other 350 cases were converted by the defendant under circumstances amounting to a trespass in Taylor County within the meaning of Exception

9 to the general venue statute, Art. 1995, R.S.1925.

The undisputed evidence discloses that the 700 cases of beans were a part of a pooled car shipment of 1,743 cases moved by rail from Salem, Oregon, to Abilene, Texas, under an "order bill of lading", wherein the Blue Lake Producers' Cooperative was both consignor and consignee. The Blue Lake attached draft drawn on Piggly Wiggly stores, for $2,700, the price of all beans in the car except plaintiff's 700 cases. The bill of lading contained a notation "notify Piggly Wiggly stores."

The carload was made up of canned products, contributed by different canners or packers, of which plaintiff was one, and such shipments were concentrated at Salem, Oregon, in charge of the Blue Lake Producers' Cooperative, which placed the shipments in the pooled car and forwarded same to Abilene. By the method pursued the different owners of the products shipped obtained freight rate advantages incident to carload shipments. The respective names of plaintiff and other contributing packers who had beans in the pooled car were not mentioned in the "order bill of lading."

On September 12, 1940, the plaintiff forwarded its 700 cases to the Blue Lake Producers by motor freight. That shipment was received at Salem, Oregon, and the Blue Lake Producers' Cooperative acknowledged receipt therefor on September 14, 1940, and forwarded to the plaintiff an instrument designated as "Enclosure Receipt and Delivery Order." This instrument set forth the conditions upon which the Blue Lake included the plaintiff's beans in the carload lot, and stated that same were being consigned to the Piggly Wiggly stores at Abilene. So soon as the "Enclosure Receipt and Delivery Order" reached the plaintiff (Eugene Fruit Growers' Association, Eugene, Oregon), that company on September 18, 1940, drew its own separate draft on Piggly Wiggly stores, Abilene, for $1,565.37, the price of its 700 cases of beans, and forwarded the draft with its invoice covering said cases. This draft and the one drawn by the Blue Lake Producers' Cooperative for $2,700 were sent to the same Abilene bank with same notation "Notify Piggly Wiggly Stores". The drafts did not reach the Abilene bank at same time, but they were in the bank at the time the larger draft was taken up, as hereinafter stated.

When the Abilene bank received each of said drafts, it promptly notified Piggly Wiggly stores according to the notation contained in the order bill of lading and the plaintiff's invoice. Piggly Wiggly disregarded such notices and turned down the carload shipment.

At the above juncture R. H. Gambill, purporting to be a broker buying and selling produce to wholesale and retail stores, appeared upon the scene with the knowledge that the car contained beans and that Piggly Wiggly had turned the shipment down. With this information he went immediately to O. R. Tullis, local manager of the defendant Johnson (the Abilene Storage Company), and disclosed to him the fact of the shipment of beans and Piggly Wiggly's rejection of the same. He also exhibited to Tullis checks from various merchants, sufficient in amount to cover the $2,700 draft drawn by the Blue Lake and attached to the "order bill of lading". At his request, Tullis, acting for the defendant, went to the Abilene bank and inspected the $2,700 draft, and upon the request of Gambill, gave the bank a check drawn upon the defendant (Abilene Storage Company) for the amount of the draft and the bank delivered the same, together with the "order bill of lading" to said Gambill, who then and theretofore had made arrangements with the defendant to store the carload of beans in its storage or warehouse. The arrangement with Tullis contemplated the defendant would render different services, such as unloading the beans, storing the same until they were disposed of, and delivering the same to such persons as were entitled to them under Gambill's orders. The checks held by Gambill when he and Tullis called at the Abilene bank were delivered to Tullis for the defendant, apparently as reimbursement for the sum paid the bank for said draft. Tullis appears to have kept an accurate account of the orders and various sales made by Gambill of the beans contained in the car. All amounts, except for storage, service, etc., rendered by defendant, were turned over to Gambill, except about $86 remaining in the hands of Tullis at time of trial.

The plaintiff's draft for $1,565.37, for the 700 cases, was never paid, but was later returned on order of First National Bank of Eugene, Oregon, which was handling the transaction for the plaintiff.

The above is in substance the material facts and circumstances upon which the plaintiff predicates the charge of conversion of its goods in Taylor County by defendant through his agent Tullis.

As we interpret this record, it has never been contended that the defendant Johnson, or his agent Tullis, had any knowledge of the fact that the plaintiff's draft for $1,565.37 was at the Abilene bank, or that either of them had knowledge of the fact that said draft had anything to do with the carload of beans in question. All transactions involved in the suit, insofar as the defendant is concerned, were handled by O. R. Tullis, manager of the Abilene Storage Company. The bill of lading covering the 1,743 cases of canned beans was properly endorsed by the Blue Lake Producers' Cooperative, and this, as will appear, is considered a very significant fact in the disposition of this appeal, especially in view of the fact that said bill of lading was "shippers order" and Gambill had so informed Tullis in the outset.

On receiving said bill of lading, Gambill presented same to the railway company, which promptly acted upon the same and delivered the car of beans to Gambill's order by spotting it on the storage company's tract, where it was promptly unloaded under arrangements between Gambill and Tullis. Gambill proceeded to deliver at once such beans as had been purchased by different customers and paid for with the checks he held in his possession when he and Tullis first went to the bank with the view of paying off Blue Lake's draft and obtaining said "order bill of lading."

While Gambill was disposing of the beans and defendant was delivering them, some on oral and some on written orders from Gambill, the defendant or Storage Company received on November 12, 1940, direct notice from the plaintiff Eugene Fruit Growers' Association not to dispose of any beans contained in the car which belonged to it. At that date, however, all the beans in the car had been disposed of and delivered to Gambill or his order, except the 350 cases identified as belonging to plaintiff, and the 125 other cases later identified as owned and shipped in the pooled car by the Silvertone Canning Company. On receiving said notice the defendant made no more delivery of beans to Gambill but did deliver the 350 cases to plaintiff and the 125 cases to the Silvertone Canning Company.

The 350 cases belonging to the plaintiff and disposed of by Gambill before said notice constitute the basis of this law suit. The defendant is charged with participation in, or acting with Gambill in, the conversion of its 350 cases of beans under the circumstances detailed. Plaintiff contends that "this record does not show a case where Gambill had title to a part of the carload of beans, nor where he had legal title nor the right to possession of the whole car." The plaintiff insists that "this is a case where two outsiders volunteered to pay off a draft and get the beans into their possession, all of which was done in Taylor County, Texas, and in repudiation of the rights of the lawful owners of a part of the beans."

The defendant insists that he (the Abilene Storage Company) was entitled to assume, under the facts disclosed, that Gambill was either the owner or in rightful possession of the beans and that he (defendant) had a right to proceed upon such theory, at least until November 12, 1940, when O. R. Tullis received from plaintiff the letter notifying him that the 700 cases of beans in the car belonged to the Eugene Fruit Growers' Association. After that date, as stated, the defendant refused to deliver to Gambill or his order said 350 cases, but returned them to plaintiff, and likewise returned the 125 cases to Silvertone Canning Company. The defendant contends that under such undisputed testimony his conduct with reference to the receipt and disposition of the car of beans brings him within the rule of law stated as follows: "Where the bailee returns the property to the bailor, or delivers it to a third person in accordance with the terms of the bailment, he acting as a mere conduit, before he has any notice of any adverse claim to the property, he is not liable to the true owner of the property for its conversion." 43 A.L.R. 171, II, c.

As to the 125 cases, defendant contends that they belonged to the Silvertone Canning Company, and if the evidence did not so show, then and in any event, the plaintiff wholly failed to introduce any evidence to show that the 125 cases belonged to it. These contentions will be presently disposed of.

In the light of the authorities and the facts presented by this record, Gambill

apparently bought the beans and had the title or rightful possession thereof when viewed from the standpoint of the defendant or Abilene Storage Company. Until informed of the true facts it was the duty of the storage company to deliver the beans to the order of Gambill, who took up the shippers "order bill of lading." The defendant continued to so act until the notice of November 12, 1940.

This was an inter-state shipment of goods and governed by the provisions of the Federal Bill of Lading Act, 49 U.S.C.A. § 81 et seq., pertinent sections of which are as follows:

"A bill [of lading] in which it is stated that the goods are consigned or destined to the order of any person named in such bill is an order bill. Any provision in such a bill or in any notice, contract, rule, regulation, or tariff that it is nonnegotiable shall be null and void, and shall not affect its negotiability within the meaning of this chapter unless upon its face and in writing agreed to by the shipper." Sec. 83.

"The insertion in an order bill of the name of a person to be notified of the arrival of the goods shall not limit the negotiability of the bill or constitute notice to a purchaser thereof of any rights or equities of such person in the goods." Sec. 87.

"An order bill may be negotiated by any person in possession of the same, however such possession may have been acquired, if by the terms of the bill the carrier undertakes to deliver the goods to the order of such person, or if at the time of negotiation the bill is in such form that it may be negotiated by delivery." Sec. 110.

■ The above statutes have been construed in many cases. In Tennessee Egg Co. v. Monroe, 151 Tenn. 121, 268 S.W. 372, it was held: "Under the federal Bill of Lading Act * * * consignor using 'order bill' loses control over goods, and person acquiring bill obtains good title as against owner, his vendee, or creditors."

It was also held in Old National Bank v. People's Bank, 89 W.Va. 132, 108 S.E. 716, 717, 18 A.L.R. 728, that: "The bill of lading is in the nature of a muniment of title, the holder of it being entitled to demand possession of the goods shipped when they reach their destination, and the carrier being relieved of liability on account of the carriage of said goods when it delivers the same to the holder of such bill of lading."

To the same effect is the opinion in Means v. Bank of Randall, 146 U.S. 620, 13 S.Ct. 186, 189, 36 L.Ed. 1107, wherein it was held: "As to the four car loads named in the bill of lading, that instrument represented the cattle; and the transfer of the ownership as well as of the right of possession was made as effectually by the transfer of the bill as it could have been by a physical delivery of the cattle", —citing many authorities.

■ Certainly one to whom an order bill of lading is negotiated may convey the property shipped to a purchaser in good faith. F. L. Shaw Co. v. Coleman, Tex. Civ.App., 236 S.W. 178, (writ ref.); 7th Tex.Jur. page 39, Sec. 21.

Temple v. Southern R. Co. et al., 190 N.C. 438, 129 S.E. 815, is in point with the facts of this case. There a bill of lading was issued by Grand Trunk Railway at St. Lamberts, Quebec, for a carload of hay to be shipped to Macon, Georgia, and there to be delivered to the order of Wm. C. Bloomingdale, shipper, notify J. E. Temple. This bill of lading was transferred and assigned by endorsement by Wm. C. Bloomingdale, etc. That opinion is in part as follows: "The bill of lading, providing for the delivery of the hay to the order of Wm. C. Bloomingdale, the shipper, at Macon, Ga., with the name of the shipper written on the back thereof, was offered in evidence by plaintiff. * * * It is an order bill of lading and therefore negotiable by endorsement. * * * Its negotiability is not affected by the provision that J. P. Temple be notified of the arrival of the hay at destination. * * * Possession of the bill of lading by the plaintiff, with the indorsement of the shipper, is evidence of plaintiff's ownership of the hay, and of his right to the proceeds of the sale of the same. * * * No further evidence of the sale, transfer, or assignment of the bill of lading by either the Canadian Bank of Commerce, or Wm. C. Bloomingdale * * * was necessary. Upon the issue in this case it is immaterial whether there was other evidence of the sale, transfer, or assignment of the bill of lading or not. * * * The order bill of lading, endorsed by the shipper, in the possession of plaintiff, was sufficient evidence of plaintiff's ownership of the bill of lading and of the hay for which the bill of lading was issued."

See also F. L. Shaw Co. v. Coleman, Tex.Civ.App., 236 S.W. 178; Chandler Motor Co. v. United Fruit Co., 127 Misc. 432, 216 N.Y.S. 413; 37 Tex.Jur. 131, Sec. 34.

Bearing upon the contention that possibly the Piggly Wiggly Company had some rights in the shipment under the facts stated, it was held under similar circumstances in Kemper Mill & Elevator Co. v. Hines, 293 Mo. 88, 239 S.W. 803, 806, in part as follows: "It is also true that the mere fact that Eby & Son were required to be notified by the bills of lading themselves in no way gives them any rights in or, authority to receive the goods or makes them agents of the consignor for so doing. Under the language of the bills themselves, Eby & Son had no interest in or authority over the goods whatever", citing authorities.

That opinion also refers to Sec. 87, supra, as authority for its conclusion.

Under the facts and foregoing authorities, we are of the opinion that the plaintiff failed to make any proof of the conversion charged against the defendant as a basis for venue in Taylor County. The testimony does not bring him or his connection with the transaction within the rule set forth in Compton v. Elliott, 126 Tex. 232, 88 S.W.2d 91, governing the fixing of venue under said Exception 9.

Further, we conclude the evidence shows the Silvertone Canning Co. owned the 125 cases of beans which the defendant delivered to that company after it received the notice of November 12, 1940. However, if we be mistaken in so appraising the evidence, then we are definitely of the conclusion that the plaintiff failed to establish its title to the 125 cases of beans and the burden was upon it to do so if it desired to rest its claim of venue in Taylor County on any conversion or disposition made by defendant of said 125 cases in that county.

Apparently the plaintiff's situation on this venue issue was brought about by its undertaking to collect for its beans by drawing a separate draft for $1,565.37, or by the failure on its part and the Blue Lake Producers to attach that draft to the "order bill of lading", or by the failure of both or either of them to notify the Abilene bank not to deliver the car of beans until the $1,565.37 was also paid.

For the reasons assigned, the judgment of the trial court is reversed, and since the testimony has been fully developed, it is the order of this court that the defendant's plea of privilege be sustained and that the venue of the cause be transferred to the proper district court in Tarrant County, Texas. It is so ordered.