**POLLARD FRIENDLY FORD CO. et al.,**
Appellants,

v.

**Bennie JOHNSON et al., Appellees.**

No. 8295.

Court of Civil Appeals of Texas,
Amarillo.

Nov. 13, 1972.

Brock, Waters & Galey, Harold H. Pigg, Lubbock, for appellants.

McClendon & Richards, Tom M. Richards, Lubbock, for appellees.

ELLIS, Chief Justice.

This is an appeal from a judgment entered against an automobile dealer and two of its salesmen upon an alleged conversion of appellees' automobile purportedly traded in upon the purchase of another vehicle. The appellants challenge the trial court's judgment contending that the contractual relations between the seller and purchaser, together with the purchaser's acts and conduct relied upon by the seller, precluded recovery upon the claim that appellants had

converted the appellees' automobile. The appellees assert that no binding purchase agreement between the parties had been reached in the use car transaction and that the dealer's retention of the trade-in automobile constituted a conversion of the appellees' property. Reversed and remanded.

The suit was instituted by Bennie Johnson and wife, Janie Johnson, appellees, to recover against Pollard Friendly Ford Company and certain of its agents and employees upon an alleged claim of conversion of the Johnsons' 1966 Ford Mustang automobile. The appellants will sometimes be referred to as "Pollard" while the appellees will be referred to as "Johnson" or "Johnsons." The controversy arose out of a used automobile transaction resulting from negotiations for the trade-in of Johnsons' 1966 Ford Mustang upon the purchase of a 1967 Ford LTD vehicle belonging to Pollard. On Saturday, March 9, 1968, Bennie Johnson signed a contract for the purchase of the 1967 LTD vehicle, and, on the same date, he took possession of the LTD and left the 1966 Mustang on Pollard's used car lot. On Monday, March 11, 1968, the Johnsons returned the LTD automobile to Pollard's used car lot. Pollard contended that the contract of March 9, 1968, was final except for the possible revision of the exact sum required to pay off a lien on the Mustang in favor of Universal CIT. During the negotiations Johnson had indicated that the required pay-off sum of the lien on the Mustang was approximately $800, and it was understood that the exact amount of the lien would be ascertained from Universal CIT on Monday March 11, 1968. Johnson contended that the contract of March 9, 1968, was signed by him in blank and that he relied upon the representation by one of Pollard's salesmen that the contract would be filled in and effective only in the event that the monthly payments on the LTD Ford would be $77.68 per month, the same as those on the 1966 Mustang being traded in. It was determined on Monday, March 11, 1968, that the amount of the outstanding lien on the Mustang in favor of Universal CIT was $899.72. When Johnson returned to Pollard's used-car lot on Monday, March 11, he was informed that because of the higher pay-off figure resulting in a greater net difference between the price of the two vehicles, his payments could not be maintained at the same amount as those on the Mustang. Johnson contends that, at that time, he advised one of the Pollard salesmen that he could not make the higher monthly payments and that he desired to have his 1966 Mustang returned and not consummate the purchase of the LTD Ford. Pollard took the position that Johnson had executed a binding sales contract for the purchase of the 1967 LTD and that Pollard had relied upon such sales contract, and upon the basis of Johnson's acts and conduct, was rightfully in possession of the trade-in vehicle. Also, it was contended that because of such reliance Pollard subsequently paid off the lien on the Mustang.

There was testimony and evidence in the record to the effect that there were three different contracts signed by Johnson for the reason that changes were made to accommodate Johnson's requests regarding the payment of the extra $99.72 between the estimated $800 pay-off figure and the ascertained amount of $899.72. The salesman, Cadzow, stated that the original contract signed on Saturday, March 9, 1968, showing $800 as the pay-off figure, was marked "void" and returned to Johnson, and that he prepared a second contract showing the extra $99.72 to be payable on March 22, 1968. Also, the salesman stated that Johnson later advised him that he could not pay the entire $99.72 on March 22, 1968, and he agreed to pay one-half of the $99.72, $49.86, on March 22, 1968, and the other one-half, $49.86, on April 5, 1968. There was also testimony and evidence to the effect that in order to comply with such arrangement a third contract was signed by Johnson and the second contract was marked "void" and returned to him.

There is evidence, also, that Johnson requested Pollard to return the Mustang, and upon Pollard's failure to do so, Johnson retained possession of the LTD Ford. Subsequently, the LTD was repossessed by reason of claimed default in payment of installments alleged to be due. The Johnsons contended that no final "deal" or agreement for the purchase and trade-in had been negotiated between the parties and that their 1966 Ford Mustang had been converted to Pollard's benefit.

The case was tried to a jury and submitted upon 24 special issues. Upon the jury's findings, the trial court entered its judgment against the appellants from which this appeal is brought.

■ By the jury's answers to Special Issues Nos. 1 and 2, it found that two salesmen, Bill Cadzow and "Red" Holland, respectively, converted the 1966 Mustang automobile to the use of Pollard Friendly Ford Company. In this connection the court properly instructed the jury "that the term 'conversion' or 'convert' means any distinct act or dominion wrongfully asserted over another's property in denial of his right or inconsistent with it." By its answers to Special Issues Nos. 8 and 9 the jury found that appellee Bennie Johnson signed the contract labeled Plaintiff's Exhibit No. 1 in blank. Although there is conflict in the testimony as to whether or not the contract was executed in blank, it is uncontradicted that the contract designated as "Plaintiff's Exhibit No. 1" was executed on March 9, 1968. Although two other contracts, designated as Plaintiff's Exhibits Nos. 2 and 3, were exhibited and the testimony was at variance as to the date they were signed and whether they were in fact signed by Johnson, the jury found by its answers to Special Issues Nos. 4 and 6 that such two contracts were not signed by Johnson. The jury found in response to Special Issue No. 14 that Johnson did not sign any contract after March 9, 1968. However, by its answer to Special Issue No. 19, the jury found "that Plaintiff Bennie Johnson signed a contract agreeing to purchase a 1967 Ford LTD automobile from Pollard Ford Company, agreeing to pay for the same in installments over a period of time." In response to Special Issues Nos. 11, 12 and 13, respectively, the jury found that Pollard paid off a lien on the 1966 Ford Mustang; that the Johnsons knew, or should have known under the circumstances then existing, that Pollard would pay off the lien against the 1966 Mustang automobile; and that the acts or conduct by the Johnsons led Pollard into paying off the lien against the 1966 Mustang automobile. The jury further found by its answers to Special Issues Nos. 16 and 17, respectively, that the Johnsons took possession of the 1967 Ford LTD automobile from Pollard and that Pollard delivered possession of the 1967 Ford LTD to the Johnsons, believing as an ordinary prudent person would have believed under the circumstances, that the Johnsons were purchasing the LTD automobile. Further, the jury found by its answer to Special Issue No. 18 that the Johnsons did not waive any rights they might have had to complain of the transaction between the parties, and the jury was instructed that a waiver was a voluntary relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of a right. Also, the jury found by its answer to Special Issue No. 20 that Johnson did not execute the contract for the purpose of obtaining possession to the 1967 Ford LTD automobile.

■ The appellants assert by various points of error that the court erred in rendering the conversion judgment against them on the grounds that there is an irreconcilable and fatal conflict between the jury's findings of conversion of the Johnsons' 1966 Mustang automobile and its findings that Johnson had signed a contract agreeing to purchase the 1967 LTD automobile and trade in his 1966 Mustang as part of the purchase price for the automobile being purchased. Also, in this connection, the appellants insist that by reason of Pollard's justified reliance upon the execution of the sales contract, the purchaser's acts and conduct in leaving the Mus-

tang in possession of the seller and Johnson's taking possession of the LTD automobile, there would be no wrongful possession thereby precluding any basis for a finding that the trade-in automobile was converted. Appellants further assert that the court erred in submitting issues regarding the alleged act of conversion on the grounds that the great weight and preponderance of the evidence establishes as a matter of law that no conversion could have occurred under the circumstances of this case. Also, appellants assign error in the rendition of judgment against them contending that the appellees are estopped to seek recovery against the appellants on the grounds of conversion since by Johnson's signing of the contract coupled with appellees' acts and conduct, the appellants were led into paying off the lien on the Mustang vehicle and that appellees knew or should have known that Pollard would pay off the lien. Further, appellants insist that a finding of conversion is precluded and cannot be sustained as a basis for judgment against them in view of the jury's findings that the possession of the LTD was delivered to the Johnsons under the belief, as a prudent person would have believed under all of the circumstances, that the Johnsons had purchased the Ford LTD automobile and had agreed to pay for the same in installments over a period of time. In this connection, the appellants assert, in effect, that their rightful possession of the Mustang was established by virtue of the vehicle being traded-in and applied on the purchase price of the LTD vehicle purchased by the Johnsons under the contract. It is well settled that there is no conversion when a party takes only what he is entitled to receive and does not assert dominion or ownership over that to which he is not entitled. Texas Cotton Co-op Ass'n v. Felton, 52 S.W.2d 1105 (Tex.Civ.App.—Texarkana 1932, writ dism'd).

■ An overview and assessment of the foregoing findings disclose various inconsistencies which would prevent the rendi-

tion of a valid judgment for either of the parties. It is well established that it is the duty of the court to reconcile conflicts in the jury's basic findings if there is any reasonable basis therefor. Ford v. Carpenter, 147 Tex. 447, 216 S.W.2d 558 (1949); Stuckey v. Union Mortgage & Investment Company, 383 S.W.2d 429 (Tex.Civ.App. —Tyler 1964, writ ref'd n. r. e.). In the case of Little Rock Furniture Manufacturing Company v. Dunn, 148 Tex. 197, 222 S.W.2d 985 (1949), it is set out that "to require a judgment entered on a verdict containing conflicting answers to be set aside, the conflict between the answers must be such that one answer would establish a cause of action or defense, while the other would destroy it." In the instant case it appears, on the one hand, that the jury's finding as to Johnson's signing of the purchase contract; Pollard's payment of the lien and the apparent justification for so doing based upon Johnsons' acts and conduct; the Johnsons' taking possession of the LTD Ford with appellants' delivery of possession thereof under circumstances justifying their belief that the Johnsons were purchasing such vehicle, with the Mustang Ford being left in appellants' possession, apparently as a part of the purchase price of the LTD, all would serve to support the appellants' position on the possession aspect of this case. Also, these answers, cumulatively, would defeat appellees' cause of action for conversion; and if the findings of conversion in response to Special Issues Nos. 1 and 2 were disregarded, it is our opinion that the remainder of the verdict would require a judgment for the appellants. On the other hand, if the responses to the above mentioned issues regarding Johnson's signing of the contract and Pollard's apparent justifiable possession of the Mustang vehicle were disregarded, then it appears that the conversion findings could be sustained.

■■ It is well settled that in case of irreconcilable or fatal conflict in the jury's answers in matters essential to a determination as to which party should prevail,

the conflict cannot be waived by the parties, and the judgment based thereon cannot be sustained. Little Rock Manufacturing Company v. Dunn, supra. In the case at bar, it is our opinion that the jury's findings of conversion and those findings dealing with the nature and circumstances surrounding appellants' possession of the vehicle in question constitute an irreconcilable conflict and require a new trial. This holding pretermits our passing upon the other points submitted.

Accordingly, the judgment of the trial court is reversed and the cause remanded.