STEWART & STEVENSON SERVICES, INC., Appellant,

v.

Gary A. KRATOCHVIL, d/b/a K-2 Petroleum, Inc., Appellee.

No. 04-86-00460-CV.

Court of Appeals of Texas, San Antonio.

Aug. 5, 1987.

Rehearing Denied Sept. 9, 1987.

Paul M. Ireland, Jr., San Antonio, for appellant.

Jack M. McGinnis, San Antonio, for appellee.

Before ESQUIVEL, REEVES and DIAL, JJ.

## OPINION

DIAL, Justice.

This suit was brought by appellant Stewart & Stevenson Services, Inc. (hereinafter referred to as "S & S") to recover money due and owing by appellee Gary A. Kratochvil d/b/a K–2 Petroleum, Inc. (hereinafter referred to as "K–2") for the rental of a 50 kilowatt generator. K–2 counterclaimed alleging conversion of a 20 kilowatt generator which it had turned over to S & S for repair. Upon completion of the repair, S & S delivered the repaired generator to a third party owner upon its demand rather than returning it to K–2. In a non-jury trial, judgment was rendered for K–2 in the amount of $4,600.00 for damages for conversion of the 20 kilowatt generator and for S & S in the amount of $1,734.42 for rental of the 50 kilowatt generator, the rental amount to be an offset against the award to K–2.

This appeal has been limited pursuant to TEX.R.APP.P. 40(a)(4) to the counterclaim by appellee K–2 for conversion of the 20 kilowatt generator.

The facts leading to K–2's claim for conversion against S & S of the 20 kilowatt generator are generally undisputed and are as follows. In early 1984, K–2 was engaged in a joint venture drilling prospect known as the Crouch No. 1 Well with El Dorado Oil & Gas, Inc. (hereinafter referred to as El Dorado). K–2 had an operating agreement with El Dorado whereby El Dorado provided a working generator, among other things, for its working interest in the well. The generator was on-site and in use at the Crouch Well No. 1 beginning in January of 1984. It became non-functional in February and K–2 sought to have El Dorado replace it with another generator or repair it and pay for a rental unit. El Dorado refused K–2's request.

On February 10, 1984, K–2 orally contracted with S & S for the repair of the generator. S & S picked it up and took it to its shop. At this time, K–2 also rented from S & S a replacement generator.

Shortly after receiving the generator for repair, S & S was notified orally by El Dorado that it was the true owner of the generator. El Dorado identified it by model and serial number and demanded its return upon completion of repairs. S & S knew of the common practice among oil field companies to switch, loan and borrow equipment among themselves. Repairs were completed on February 24, 1984 and S & S notified El Dorado of same. El Dorado took possession of the generator after paying repair costs of $327.34. S & S did not contact K–2 with regard to El Dorado's demand for possession or make any inquiry into K–2's right of possession or file a bill of interpleader. Nor did S & S notify K–2 that El Dorado had picked up the repaired generator. In late May or early June, K–2 called to inquire as to the status of the repairs. During this telephone conversation, S & S for the first time told K–2 that they had delivered the generator to El Dorado.

On May 4, 1984, before any notice to K–2 of S & S's delivery of the 20 kilowatt unit to El Dorado, K–2 and El Dorado terminated their joint venture on the Crouch No. 1 Well. A settlement agreement was drawn up which provided "that all salvageable equipment and supplies from the Crouch project are the property of K–2 Petroleum, Inc." By that date the generator had been in El Dorado's possession for over a month.

The trial court correctly found that the oral contract for repair of the 20 kilowatt generator constituted a bailment for the mutual benefit of both parties. *See Bill Bell, Inc. v. Ramsey,* 284 S.W.2d 244 (Tex. Civ.App.—Waco 1955, no writ). By general rule of law, a bailee is estopped from denying title in his bailor as a defense to a claim for conversion of the bailed property. *Walker v. Clark,* 203 S.W.2d 590 (Tex.Civ. App.—Eastland, 1947, no writ); *Grooms v. Rust,* 27 Tex. 231 (1863). However, failure to redeliver property is in some circumstances justified, for example, when the bailee delivers the property to the true owner. *Smith v. Texas & N.O.R. Co.,* 101 Tex. 405, 108 S.W. 819, 821 (1908); *Roberts v. Yarboro,* 41 Tex. 449, 453 (1874).

Appellant presents two points of error on appeal. In point of error two, S & S as-

serts that it is not liable for conversion because it delivered the generator to K–2's partner in a joint venture and that such delivery constitutes constructive delivery to K–2.

The trial court made a factual finding that K–2 and El Dorado were joint venturers in the development of the Crouch Well No. 1 project. Appellee asserts that the joint venture and operating agreement between El Dorado and K–2 is not in the record and thus there is no evidence of the relationship, duties, power, or authority of the parties to establish agency or responsibility between the parties for purposes of constructive delivery and imputed notice. Contrary to this assertion is the testimony in the record of Gary Kratochvil, President of K–2. He testified that K–2 was in a joint venture with El Dorado. This is also admitted by appellee in its brief. When adequately supported by competent evidence, findings of fact made by the trial court are ordinarily binding on the appellate court. *Reyes-Retana v. PTX Food Corp.*, 709 S.W.2d 695 (Tex.App.—San Antonio 1986, writ ref'd n.r.e.). We uphold the finding of joint venture.

A joint venture is a distinct legal entity in the nature of a partnership but is usually limited to one particular enterprise. TEX.REV.CIV.STAT.ANN. art. 6132b, § 1 *et seq.* (Vernon 1970). A joint venture is governed by the same rules as a partnership. *Weatherford v. Lee*, 364 S.W.2d 730 (Tex.Civ.App.—San Antonio 1963, writ ref'd n.r.e.). Under Texas law every partner is an agent of the partnership for the purpose of its business. TEX.REV.CIV. STAT.ANN. art. 6132b, § 9 (Vernon 1970). Because a joint venture has the attributes of a partnership, the law of partnership applies insofar as alleged joint venturers have mutual agency between themselves. *Gibson v. Northeast National Bank*, 602 S.W.2d 337, 341 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n.r.e.); *see also Colonial Refrigerated Transportation, Inc. v. Mitchell*, 403 F.2d 541 (5th Cir.1968). It follows that El Dorado was an agent for the joint venture when it took possession of the generator from S & S and delivery of the generator to El Dorado was constructive delivery to K–2 as well.

Appellee argues that S & S is not absolved from liability by delivery of the bailed property to a co-owner or partner of the bailor and cites as authority *Nelson v. King*, 25 Tex. 656 (1860). In that case, the bailee of a land scrip delivered the scrip to a third party who was a part owner of the scrip. The bailor sued the bailee for conversion of the scrip and recovered the amount of its value. The bailee contended that he could hold the scrip subject to the demand of any one or all of the co-owners. The court held that if the scrip was placed in his hands by all of the part owners of it, without any special agreement as to whom it should be delivered by the bailee, the bailee could only acquit himself of responsibility by redelivering the scrip on the joint demand of all of the persons making the deposit. *Nelson v. King* is distinguishable from the case at bar in that the case involved co-owners rather than joint venturers and there was no allegation of any relationship between the co-owners of the scrip which might create a mutual agency between them.

We sustain appellant's second point of error. Because it is unnecessary to the disposition of this appeal, we do not decide appellant's first point of error. TEX.R. APP.P. 90(a).

That part of the judgment finding conversion and awarding damages for same is reversed, and judgment is here rendered that appellee take nothing on its counterclaim.