**ENDURO OIL COMPANY and McFadden Oil Corporation, Appellants**

v.

**PARISH & ELLISON, Appellee.**

No. C14–91–00681–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 2, 1992.

Rehearing Denied July 30, 1992.

Lee S. Gill, Houston, for appellants.

Shawn Casey, Houston, for appellee.

Before JUNELL, ROBERTSON and DRAUGHN, JJ.

## OPINION

ROBERTSON, Justice.

This is an appeal from a non-jury trial in which judgment was rendered for Parish & Ellison (appellee) for damages sustained as a result of appellants' actions. The trial court found that appellants willfully and intentionally committed conversion and awarded appellee $51,046.22 after concluding that appellants were entitled to a $40,000 offset. In seven points of error, appellants challenge the trial court's determination of conversion, the amount of damages and the evidence supporting the findings of fact and conclusions of law. We reverse.

This case involves the competing claims of Enduro Oil Company (Enduro), an oil and gas operator, and McFaddin Oil Corporation, an oil purchaser, on the one hand and Parish and Ellison, a lienholder, on the other hand, to a fund of money representing proceeds of oil sales accruing to the 9% working interest of Peregrine Petroleum of Houston, Inc. (Peregrine) in certain leases in Howard County, Texas. These leases were subject to an operating agreement dated October 16, 1984, which required each non-operator to pay its share of expenses. To secure payment, the agreement required the non-operators to grant a lien upon their oil and gas rights and a security interest in their share of oil and gas, when extracted, to the operator. Initially, Peregrine was the operator, but it resigned in favor of Enduro in 1986. Once the wells were drilled and producing, McFadden began purchasing the oil. Thereafter, Enduro began billing Peregrine for its share of the operating expenses. However, Peregrine has failed to pay the lease operating expenses totaling $70,334.08 and the completion expenses totaling $60,000. Relying on the operating agreement, Enduro and McFadden held Peregrine's share of the proceeds from the wells so it could be applied to its expenses.

On July 2, 1987, Peregrine executed a promissory note in favor of appellee in the amount of $35,000 for payment of legal services that had accrued. This note was secured by a deed of trust, security agreement and an assignment of production, regarding Peregrine's share of production in the oil wells in Howard County, but was made expressly subject to the operating agreement and the operator's lien provisions contained therein. These documents along with a financing statement, were filed in Howard County and in the secretary of state's office. The deed of trust also covered any future advances.

On August 5, 1987, appellee sent a letter to appellants informing them of Peregrine's assignment of proceeds from the 45 wells and that such assignment was secured by a financing statement, deed of trust and assignment of proceeds. At the time of the assignment to appellee, McFadden held $72,764.42 of Peregrine's money in suspense and Enduro held $15,493.20 of Peregrine's money in suspense. Subsequently, the money in McFadden's suspense account was paid over to Enduro. These funds in the suspense accounts were Peregrine's proceeds of production from the sale of oil and gas attributable to its 9% working interest in the 45 producing wells, which is allegedly covered by appellee's security interest and assignment of accounts. Appellants refused to turn over to appellee any of the funds assigned to it because Peregrine was indebted to Enduro for $130,334.08 for lease operating and completion expenses. Since Peregrine was unable to pay appellee because appellants held the funds, appellee incurred additional expenses and interest; thus at the date of trial, damages totaled $91,046.22. On April 8, 1991, the trial court found that appellants willfully and intentionally committed

conversion and awarded appellee $51,-046.22 after concluding that appellants were entitled to a $40,000 offset.

In their first point of error, appellants assert that the trial court erred in concluding that their acts constituted conversion, because appellee failed to establish a valid and perfected security interest in the production money. Specifically, appellants argue that Peregrine lacked the authority to assign interest in production income because its operating expenses exceeded its income; therefore, there was nothing to assign. We agree.

■■■ Conversion has been defined as the wrongful exercise of dominion and control over another's property in denial of or inconsistent with his rights. *Robert M. Brandy Adm. v. First State Bank,* 35 Tex. Sup.Ct.J. 643, 653 (April 25, 1992). However, there can be no conversion where one takes only what he was entitled to receive. *Chavez v. Schairer,* 199 S.W. 892 (Tex.Civ. App.—El Paso 1917, no writ). Thus, if a defendant proves that he has a superior title or is entitled to the property pursuant to an agreement, an action for conversion cannot be maintained. *Pollard Friendly Ford Co. v. Johnson,* 487 S.W.2d 829 (Tex. Civ.App.—Amarillo 1972, no writ); *Texas Cotton Co-op. Ass'n v. Felton,* 52 S.W.2d 1105 (Tex.Civ.App.—Texarkana 1932, writ denied).

■■■ In order for Peregrine to properly grant a security interest in its production proceeds to appellee, it must first have rights in the collateral. Tex.Bus. & Com. Code Ann. § 9.203(a)(3) (Vernon Supp. 1991). Under the operating agreement, in the present case, Peregrine granted to Enduro:

a lien upon its oil and gas rights in the Contract Area, and a security interest in its share of oil and or gas when extracted and its interest in all equipment, to secure payment of its share of expense ... Operator shall have the right, without prejudice to other rights or remedies, to collect from the purchaser the proceeds from the sale of such Non–Operator's share of oil and or gas until the amount owed by such Non–Operator, plus interest has been paid.

Based on the terms of the operating agreement, Enduro had the right to collect Peregrine's share of the proceeds from the sale of oil or gas until Peregrine's share of expenses had been paid. Peregrine's understanding of its obligation is supported by the fact that a representative of McFadden testified that the president of Peregrine verbally authorized McFadden to turn the production income it was holding over to Enduro.

Appellee argues that the operating agreement was not properly admitted into evidence and that its assignment of proceeds from Peregrine gives it a superior right to the funds held in suspense. We disagree.

This case was a trial before the court and during appellant's bill of exception the following transpired regarding the operating agreement:

Court: Is there objection to the operating agreement being admitted into evidence?

Appellee: Yes, your Honor. It's the same objection we had before.

Court: At this time, I will overrule the objection and receive it into evidence.

Appellant: Subject to connecting it up. I'm going to prove it up as a business record.

The director of McFadden, who was also the CEO of Harmony Drilling Company, testified that the operating agreement was a business record. In addition, appellee's deed of trust, security agreement and assignment of production were filed in Howard County some two and one-half years after the operating agreement was executed and made subject to the operating agreement.

Since Peregrine owed $70,334.08 for lease operating expenses and $60,000 for completion expenses, Enduro had a superior right to the funds held in suspense pursuant to the operating agreement; thus appellee's action for conversion cannot be maintained. Appellants' first point of error is sustained.

Having sustained appellants' first point of error, we need not address the remaining points of error. We accordingly reverse the judgment of the trial court and render judgment in favor of appellant. We remand the case to the trial court to determine the appropriate amount of damages and attorney fees.