**TEXAS DIAMOND INTERNATIONAL, INC., Appellant,**

v.

**TIFFANY AND COMPANY, Appellee.**

No. 04–00–00402–CV.

Court of Appeals of Texas,
San Antonio.

Feb. 14, 2001.

Rehearing Overruled April 10, 2001.

Dick Terrell Brown, Brown & LaCallage, P.C., Austin, for Appellant.

Barry A. Chasnoff, Roberta J. Sharp, Stephan B. Rogers, Akin, Gump, Strauss, Hauer & Feld, San Antonio, for Appellee.

Sitting: TOM RICKHOFF, Justice, ALMA L. LÓPEZ, Justice, SARAH B. DUNCAN, Justice.

## OPINION

TOM RICKHOFF, Justice.

This is a dispute over a stolen eighteen-carat gold, diamond and amethyst necklace. Texas Diamond International, Inc. ("Texas Diamond") appeals from a summary judgment rendered in favor of Tiffany and Company ("Tiffany"). In sixteen issues, Texas Diamond asserts the trial court erred in granting Tiffany's motion for summary judgment. Because we find there are genuine issues of material fact sufficient to defeat Tiffany's entitlement to summary judgment, we reverse and remand.

## BACKGROUND

Since at least 1972, Tiffany has developed, produced, and merchandised jewelry based on designs created by Jean Schlumberger. Schlumberger designed jewelry for Tiffany from 1956 until just before his death in 1987. In 1988, Tiffany completed a necklace based on a design Schlumberger called "Leaves." The necklace, made of platinum, amethysts, diamonds, and eighteen-carat gold, was offered for sale in Tiffany's 1988–1989 Blue Book catalog. In October 1994, while en route from Tiffany's Taipei store to its New York store, the necklace disappeared.

In April 1998, Anselmo Garcia, Andrew Garza, and Priscilla Garza sold Texas Diamond a necklace, which it describes as made of precious metal with more than ten carats of good quality diamonds of varying sizes and amethyst drops, each fitted with two or more .04–carat diamonds set in precious metal tubes. This necklace bears the mark "Tiffany Schlumberger." In May 1998, Texas Diamond's agent, Beverly Hills Auctioneers, Inc. ("BHA"), sent the necklace to Tiffany for evaluation and to confirm the authenticity of the "Tiffany Schlumberger" mark. Tiffany agreed to evaluate the necklace in exchange for a $250 fee.

In June 1998, Tiffany advised BHA that it would not return the necklace, because it had determined that the necklace received from BHA was the Schlumberger "Leaves" necklace stolen in 1994. Tiffany kept the necklace, claiming superior title, and Texas Diamond sued Tiffany and others.

Texas Diamond and Tiffany filed cross-motions for summary judgment. Texas Diamond also filed a motion to strike Tiffany's motion for summary judgment and raised several objections to Tiffany's summary judgment evidence. The trial court overruled Texas Diamond's motion to strike and its objections, denied Texas Diamond's motion for partial summary judgment, and granted Tiffany's motion for summary judgment. The court severed all of Texas Diamond's causes of action against Tiffany, rendering the take-nothing summary judgment in favor of Tiffany final and appealable.

## DISCUSSION

Texas Diamond's sixteen issues on appeal may be summarized in three complaints: the trial court erred in (1) denying its motion for partial summary judgment, (2) overruling its objections to Tiffany's summary judgment evidence, and (3) rendering summary judgment in favor of Tiffany.

### TEXAS DIAMOND'S MOTION FOR PARTIAL SUMMARY JUDGMENT

■ Texas Diamond moved for partial summary judgment, and moved to strike Tiffany's motion for summary judgment, on the grounds that Tiffany was Texas Diamond's bailee, and as such, was estopped from challenging Texas Diamond's title to or right to possession of the necklace. Therefore, Texas Diamond concludes, Tiffany is liable for conversion of the necklace. Texas Diamond urges this Court to adopt a *per se* rule that a bailee's failure to return property to its bailor can never be justified. In view of the general rule of bailment and its exceptions, discussed below, we decline to adopt such a *per se* rule.

■ Conversion is any distinct act of dominion wrongfully exerted over another person's personal property in denial of, or inconsistent with, that other person's superior right in the property, either permanently or for an indefinite time. *International Freight Forwarding, Inc. v. American Flange*, 993 S.W.2d 262, 269 (Tex.App.—San Antonio 1999, no pet.). In a claim for conversion, the plaintiff must prove that he or she was the owner of the property, had legal possession of it, or was entitled to possession. *American Flange*, 993 S.W.2d at 269. The plaintiff does not have to possess title to the property to maintain ownership so long as it has the right to immediate possession. *Id.* However, if the defendant proves that it has superior title, an action for conversion cannot be maintained. *Enduro Oil Co. v. Parish & Ellison*, 834 S.W.2d 547, 549 (Tex.App.—Houston [14th Dist.] 1992, writ denied).

As a general rule, a bailee is estopped from denying title in his bailor as a defense to a claim for conversion of the bailed property. *Stewart & Stevenson Serv., Inc. v. Kratochvil,* 737 S.W.2d 65, 66, 139 L.Ed.2d 654 (Tex.App.—San Antonio 1987, no writ). The failure to return bailment property at the end of the bailment period constitutes a conversion of the property, entitling the bailor to recover its value. *Soto v. Sea–Road Int'l, Inc.,* 942 S.W.2d 67, 72 (Tex.App.—Corpus Christi 1997, writ denied). However, failure to redeliver property is in some circumstances justified, for example, when the bailee delivers the property to the true owner. *Stewart & Stevenson,* 737 S.W.2d at 66, 139 L.Ed.2d 654. This is so because a bailee cannot successfully resist the claim of a true owner. *Smith v. Texas & N .O.R. Co.,* 101 Tex. 405, 108 S.W. 819, 820 (1908). Once a bailee is informed of the true owner's identity, the bailee is obligated to return the property to the true owner. *Abilene Storage Co. v. Eugene Fruit Growers' Ass'n,* 170 S.W.2d 511, 513 (Tex.Civ.App.—Eastland 1943, no writ). To protect a bailee, and give it time to determine true ownership, a bailee should deliver the bailed goods into the registry of the court. *Smith,* 108 S.W. at 821.

In view of the above, it is not enough that Texas Diamond rely on its estoppel theory. To prevail on its claim of conversion, Texas Diamond had to prove it was the owner of the necklace, had legal possession of it, or was entitled to possession of it. *See Soto,* 942 S.W.2d at 73.

**TEXAS DIAMOND'S SUMMARY JUDGMENT EVIDENCE**

Texas Diamond provided no summary judgment evidence regarding its purchase of the necklace. Nevertheless, it is not disputed that Texas Diamond purchased the necklace, and through its agent BHA, sent the necklace to Tiffany for an evaluation. However, one who purchases stolen property, no matter how innocently, acquires no title in the property; title remains in the owner. *Olin Corp. v. Cargo Carriers, Inc.,* 673 S.W.2d 211, 216 (Tex. App.—Houston [14th Dist.] 1984, no writ). If the necklace purchased by Texas Diamond was the Tiffany "Leaves" necklace and if Tiffany can prove the same necklace was stolen, then Tiffany retained title in the necklace. Therefore, Texas Diamond's summary judgment evidence did not conclusively establish that it was the owner of the necklace, had legal possession of it, or was entitled to possession of it. To negate the conclusion that the necklace it purchased was Tiffany's stolen "Leaves" necklace, Texas Diamond submitted its expert's affidavit to contradict Tiffany's summary judgment evidence.

**THE EXPERTS' AFFIDAVITS**

In support of its motion for summary judgment, Tiffany offered the affidavits of Pierce MacGuire, Marc Joseph, and Roger Coleman. MacGuire and Joseph, both long-time employees of Tiffany's, testified that the necklace received from Texas Diamond was the Tiffany necklace based on the Schlumberger "Leaves" design featured in the 1988–1989 Blue Book catalog. Joseph testified he sent the necklace to Brun of Paris for a "special technique" used to drill the amethysts without leaving a white ring on the stone. He said it was obvious to him that the necklace received from Texas Diamond had been drilled using the Brun technique. Coleman, the Tiffany employee who investigated the loss of the Tiffany necklace in 1994, testified about its loss while en route from Taipei to New York.

In support of its motion for partial summary judgment, Texas Diamond submitted the affidavit of Frederick Grabhorn. Grabhorn is a vice president of Texas Diamond and has thirty years' experience as a lapidary (a cutter and polisher of colored precious stones other than diamonds). Grabhorn disputed Tiffany's summary judgment evidence regarding the "uniqueness" of the Tiffany "Leaves" necklace. Grabhorn stated that customers often ask jewelers to copy jewelry seen in catalogs, and although the Tiffany necklace featured in the 1988–1989 Blue Book catalog would be difficult and expensive to reproduce, it is not impossible to reproduce the necklace even if given only a copy of the catalog from which to work. Grabhorn noted that the "Leaves" necklace featured in the 1988–1989 Blue Book catalog had twenty diamond-studded amethyst drops, whereas the Texas Diamond necklace had only nineteen such drops. Grabhorn also challenged Tiffany's summary judgment evidence regarding the "special techniques" used to make the necklace. For example, Grabhorn said it was very easy to drill holes in an amethyst with no white rings around the periphery of the hole.

Texas Diamond also submitted the affidavit of Dick Terrell Brown. Brown, one of Texas Diamond's attorneys, testified about his two requests to Tiffany that Texas Diamond be given an opportunity to come to Tiffany's New York offices and inspect the necklace, along with any production records for the necklace. After the lawsuit was filed, Brown asked Tiffany to produce the necklace and production records in San Antonio. Tiffany refused, and offered the necklace for inspection at its New York offices. Apparently, no inspection has occurred.

## CONCLUSION

We review a summary judgment de novo. *Sasser v. Dantex Oil & Gas,* *Inc.,* 906 S.W.2d 599, 602 (Tex.App.—San Antonio 1995, writ denied). We will uphold a summary judgment only if the record establishes that there is no genuine issue of material fact, and that the movant is entitled to judgment as a matter of law on a ground set forth in the motion. *See* Tex.R.Civ.P. 166a(c); *Cathey v. Booth,* 900 S.W.2d 339, 341 (Tex.1995); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). We have examined all the affidavits submitted by the parties and conclude that Grabhorn's affidavit raises genuine issues of material fact about whether the necklace sent by BHA to Tiffany is the same "Leaves" necklace featured in Tiffany's 1988–1989 Blue Book catalog that Tiffany asserts disappeared in 1994. Further, even assuming Tiffany is correct that its "Leaves" necklace is too unique to be reproduced, Texas Diamond should have the opportunity to inspect the necklace before any resolution of this dispute can be made on the merits. Therefore, summary judgment in favor of Tiffany was not appropriate. Accordingly, we reverse the trial court's judgment and remand this cause for further proceedings.

Dissenting opinion by SARAH B. DUNCAN, Justice.

DUNCAN, Justice, dissenting.

I respectfully dissent. The summary judgment evidence conclusively establishes Tiffany's ownership of the necklace. I would therefore affirm the trial court's summary judgment in Tiffany's favor.

In support of its motion for summary judgment, Tiffany introduced three affidavits: Roger John Coleman, Tiffany's manager of investigations and the person who investigated the loss when the Schlumberger amethyst "Leaves" necklace was "lost in transit" somewhere between Tiffany's Taipei and New York stores; Pierce

MacGuire, the director of Tiffany's Schlumberger Department when the necklace was stolen; and Marc Joseph, an assistant buyer in the Schlumberger Department when the necklace was produced and the manager of the department at the time the necklace was stolen.

According to all three of Tiffany's witnesses, Tiffany produced the Schlumberger amethyst "Leaves" necklace in 1988. In November 1994, this necklace was "lost in transit" somewhere between Tiffany's Taipei and New York stores. At the time, MacGuire annotated the store's inventory card to reflect the necklace was "stolen [in] Taiwan." Coleman's investigation revealed a package containing the "one-of-a-kind Tiffany Schlumberger necklace" was delivered to the Taiwan Airport for shipment via China Airlines to Tiffany's New York store. However, the package never arrived in New York. Neither Tiffany's investigation nor that of the Taiwan Aviation Police Department recovered the necklace.

In his affidavit, Marc Joseph testified he worked directly with Jean Schlumberger in the production of Schlumberger jewelry. He was directly involved in the production of the Schlumberger "Leaves" necklace depicted on page 54 of the 1988–89 Tiffany Blue Book Catalog. Joseph testified this necklace and the necklace at issue in this case are "one and the same." Joseph based his conclusion on several factors:

a. Identical Stones. [Joseph] was personally responsible for procurement of the stones for the Tiffany Necklace. Amethysts in the shape depicted are not common. The amethyst stones in the Necklace have the same color, saturation, "plump" shape and overall quality as the amethysts shown in photographs of the Tiffany Necklace.

b. Markings. The piece is marked "TIFFANY SCHLUMBERGER." The marking is properly placed and consistent with Tiffany marking techniques.

c. Drilling. The drilling of the amethysts for the Tiffany Necklace was especially challenging. In order to properly drill the amethysts without leaving a tell-tale white ring on the perifery [sic], a special technique is required. In order to have the drilling properly made, [Joseph] sent the amethysts for the Tiffany Necklace to Brun of Paris. On examination, it is obvious that the stones in the Necklace have been drilled using Brun's technique. There is no periferal [sic] white ring around the setting, which would be common with any other technique.

d. Overall Manufacturing Detail. Schlumberger jewelry is very difficult to produce. The detail and workmanship is time intensive and unique. The Necklace bears the "signature" of these techniques, including pav[é] diamond set leaves, the articulated nature of the connections between the leaves, the caps on the amethysts, and the clasp.

e. Size, shape and appearance. The Necklace is identical to the photographs of the Tiffany Necklace taken after its manufacture but before shipment to Taiwan for display. It would be virtually impossible, even by our own shop, to create another necklace which could so accurately match the photographs, especially the shape of the amethysts, and placement of the diamonds in the amethysts.

Joseph concluded his affidavit by noting "[t]he Tiffany Necklace was produced only once by Tiffany & Co. Schlumberger Department using amethysts pierced with diamonds. When a piece is one-of-a-kind, we indicated this as 'Subject to prior sale' in our marketing materials. The attached pages from the 1988–89 Blue Book so state." Tiffany's summary judgment evi-

dence thus establishes its title to the unique Schlumberger amethyst "Leaves" necklace; its theft in 1994; and its identity as the necklace at issue in this case.

In response to Tiffany's motion, TDI submitted the affidavit of its vice president, Ivan Frederick Grabhorn, a lapidary with more than thirty years of experience. Grabhorn admits the necklace at issue in this case is very similar to the Schlumberger amethyst "Leaves" necklace, although it has one more amethyst drop; amethysts of the type used on the Tiffany necklace are readily available; customers commonly ask jewelers to replicate jewelry seen in magazines or catalogs or worn by another person; it would be possible to replicate the Schlumberger amethyst "Leaves" necklace; it is not possible to identify the amethyst drops on the Schlumberger amethyst "Leaves" necklace from the photograph in Tiffany's 1988–89 catalog; without microscopic photographs, it is impossible to tell if a diamond is a diamond in the Schlumberger amethyst "Leaves" necklace; jewelers know not to trust a marking as proof of origin and it was for that reason the necklace was sent to Tiffany's for evaluation; it is not difficult to drill holes in amethysts without tell-tale white holes; "difficult to produce" does not mean "unique or only achievable by Tiffany or its Schlumberger Department"; jewelers capable of making the necklace can be found in many major cities, including San Antonio; pavé diamond, leaf motifs, and articulated connections are common; neither the clasp on the necklace nor the caps on the amethysts are unique; and the Schlumberger amethyst "Leaves" could be reproduced for $21,000 plus labor.

Given this evidence, I would affirm the summary judgment. Tiffany & Co. conclusively established the necklace at issue is the one-of-a-kind Schlumberger amethyst "Leaves" necklace owned by Tiffany and stolen in 1994. At most, Grabhorn's affidavit establishes it is possible to replicate the necklace in terms of its overall design, materials, and workmanship. Nowhere does he challenge that, in Joseph's words, it would be virtually impossible even for Tiffany & Co. to create another necklace that would "so accurately match the photographs [of the stolen necklace], especially the shape of the amethysts, and placement of the diamonds on the amethysts."