

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-20-00266-CV

---

STONE CONTRACTORS, INC. D/B/A AS INFINITY ROOFING GENERAL
CONTRACTORS, APPELLANT

V.

JEFF STRILEY AND TRACY STRILEY, APPELLEES

---

On Appeal from the 181st District Court
Randall County, Texas
Trial Court No. 72,912-B, Honorable John B. Board, Presiding

---

February 1, 2022

## MEMORANDUM OPINION

Before PIRTLE and PARKER and DOSS, JJ.

Appellant, Stone Contractors, Inc. d/b/a Infinity Roofing General Contractors, sued Jeff and Tracy Striley, appellees, for breach of contract, conversion, unjust enrichment, and quantum meruit after the Strileys allegedly failed to pay for the removal and replacement of a residential roof. Following a bench trial, the trial court rendered judgment that Infinity take nothing on its claims against the Strileys. We affirm the judgment of the trial court.

## Background

Monty Stone is a roofing contractor and owner of Stone Contractors, Inc. d/b/a Infinity Roofing General Contractors. Infinity entered into an agreement with Jeff and Tracy Striley to replace the roof on the Strileys' home after it sustained damage as a result of a hailstorm. Whether the Strileys breached the agreement was contested at trial.

In late May of 2017, Charlie Thrasher,[1] a salesman for Infinity, was inspecting properties and knocking on doors in the Strileys' neighborhood. Tracy testified that Thrasher approached the Strileys' home and said, "[H]ey, it looks like you might have some hail damage." Thrasher told her that Infinity could qualify the Strileys for a roof and would repair the windows, fascia, and eaves if they agreed to use Infinity for their roof repair. Tracy notified their homeowners' insurance carrier, State Farm, of the damage.[2] State Farm assessed the damage and, on June 1, 2017, issued a check to the Strileys and their mortgage company in the amount of $12,919.05. Correspondence from State Farm introduced at trial shows that this initial payment was based on the cost of repairs with a deduction for depreciation and the Strileys' deductible.

The Strileys paid Infinity the $12,919.05 they had received from State Farm. Infinity started working on the roof the next day. The Strileys had a pre-planned, two-week vacation to Alaska and left for their trip the day that Infinity began working on the roof.

---

[1] Thrasher was no longer employed by Infinity at the time of trial.

[2] The Strileys had a homeowners' insurance policy with State Farm that was in force on the date of the hailstorm.

Tracy testified that Infinity did not provide a quote for the cost of the new roof, and described the negotiations as rushed. Tracy further testified that she was not asked to sign a contract and never saw a contract. Tracy understood that Infinity was paid in full by the initial check from State Farm.

According to Jeff, Thrasher told him that the windows and eaves were part of the deal. When Jeff met Stone and Thrasher at the house while the adjuster was looking at the roof, Jeff brought up the subject of the window and eaves repair and Stone said, "[W]e'll look into that. We'll take care of you guys."

Jeff testified that he agreed that Infinity would replace their roof and that the cost of the roof was going to be paid for by their insurance coverage. Jeff understood that they would not be required to pay any out-of-pocket expense to Infinity for the roof repair. As to the initial check from the insurance company, Jeff testified that it was his understanding that it was to cover the roof repairs. In addition, he was told that "our windows and eaves would be taken care of as well." Jeff was unclear whether the first check also included an amount for the repair of the windows and eaves.

Stone, Infinity's representative, testified that his company agreed to replace the Strileys' roof for the amount of the insurance proceeds. Stone was not present when Thrasher had the initial contact with the Strileys. Stone prepared a written agreement for the Strileys to sign. According to Stone, the Strileys signed the agreement on their front porch, but Thrasher lost it. Stone explained that "[he] would never ever move forward on a roof without a signed contract." Stone testified that his standard contract contained an agreement to pursue the insurance proceeds. Stone explained the industry standard is that the homeowner pays no out-of-pocket expense, and the roofing contractor will do the

3

job for what the insurance company pays on the covered loss. He discussed repair costs with the Strileys to be anywhere from $25,000 to $30,000. Stone did not provide a written estimate to the Strileys because "our contracts are contingency[-]based contracts and [the contract] states that it will be an agreement between the [insurance] carrier and ourselves to put that roof on." Stone acknowledged that Infinity is not a party to the insurance claim and that his contract is with the Strileys, the insureds, not the insurance carrier. Stone testified that State Farm issued the first check in the amount of $12,919.05 to the Strileys and the Strileys gave that check to Infinity. Stone told the Strileys that the first insurance check was to start the roof and that, upon completion, Infinity would be entitled to receive the second check from the insurance company.

Stone testified that he inspected the Strileys' property for all types of damage, including damage to windows, soffit, fascia, siding, brick, and the garage door. According to Stone, there was soffit and fascia damage, but it was not covered under the Strileys' insurance policy because the damage was due to lack of maintenance.

On June 13, 2017, Stone invoiced State Farm $30,502.49 for the Strileys' roof, with a balance due of $17,583.44. The following day, State Farm issued an additional check to the Strileys in the amount of $14,576.95, for recoverable depreciation related to their roof claim. Infinity attempted to get the Strileys to pay the proceeds of the second check to Infinity. J.R. Thomas, office administrator for Infinity, sent several emails, mailed demand letters, and went by the Strileys' home in an effort to collect the second check. After receiving the second insurance check, Jeff had a phone conversation with Thomas. When Jeff asked Thomas for an itemized invoice, Thomas became combative. Jeff wanted specifics as to what had been done because the windows and eaves had not yet

4

been repaired. Thomas eventually told Jeff that the windows and eaves were not covered. At that point, Jeff disputed the additional amounts claimed by Infinity and decided to research the issue further. Tracy testified that once Jeff asked Thomas for an itemized statement of what Infinity was covering, that was when Thomas "got ugly and threatened lawsuits and stuff."

Jeff testified that he was told by State Farm that "[the second check] was my money to do whatever I wanted to do with it. It was from the depreciation of my home. The diminished value." Tracy testified to her understanding that the second check from the insurance company was to pay for the other damages to the property, such as the fascia, soffit, and windows.

On October 30, 2017, Infinity sued the Strileys for breach of contract, conversion, unjust enrichment, and quantum meruit, seeking damages of $19,703.44. Infinity claimed, inter alia, that the Strileys breached the parties' agreement by refusing "to pay insurance proceeds [the Strileys] received" to Infinity. The Strileys filed a general denial and asserted affirmative defenses delineated as fraud, breach of contract, fraud in the inducement, and detrimental reliance.

After a bench trial, the trial court entered a take-nothing judgment in favor of the Strileys. This appeal followed.

Infinity timely filed a request for findings of fact and conclusions of law and a notice of past due findings and conclusions. *See* TEX. R. CIV. P. 296, 297. We abated this appeal and remanded the cause to the trial court to prepare findings of fact and conclusions of law. After filing a supplemental record with findings and conclusions, we reinstated Infinity's appeal on this Court's docket on January 28, 2021.

5

By their appeal, Infinity presents two issues. In their first issue, Infinity contends the trial court erred in finding that a cause of action under section 601.502 of the Texas Business and Commerce Code was tried by consent. In their second issue, Infinity asserts the trial court erred in denying its breach of contract, conversion, unjust enrichment, and quantum meruit claims.

Standard of Review

In an appeal from a bench trial, findings of fact have the same weight as a jury's verdict. *Scott Pelley P.C. v. Wynne*, No. 05-15-01560-CV, 2017 Tex. App. LEXIS 8228, at *23 (Tex. App.—Dallas Aug. 28, 2017, pet. denied) (mem. op.) (citing *Speer v. Presbyterian Children's Home & Serv. Agency*, 847 S.W.2d 227, 233 n.4 (Tex. 1993)). The trial court's findings of fact are reviewable for legal and factual sufficiency by the same standards that are applied in reviewing the evidence supporting a jury's verdict. *Id.* (citing *BMC Software Belg. N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002)). We do not substitute our judgment for that of the factfinder, even if we would have reached a different conclusion when reviewing the evidence. *Sava Gumarska in Kemijska Industria D.D. v. Advanced Polymer Scis., Inc.*, 128 S.W.3d 304, 313 (Tex. App.—Dallas 2004, no pet.). A trial court's findings of fact are binding on the appellate court unless challenged on appeal. *Scott Pelley P.C.*, 2017 Tex. App. LEXIS 8228, at *23.

When a party attacks the legal sufficiency of an adverse finding of fact on which it had the burden of proof, it must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). However, a legal sufficiency challenge to the evidence supporting an adverse finding of fact on an issue for which the appellant did not

have the burden of proof requires the appellant to show that no evidence supports the adverse finding. *Graham Cent. Station, Inc. v. Peña*, 442 S.W.3d 261, 263 (Tex. 2014) (per curiam). When reviewing the record, we view the evidence in the light most favorable to the finding, considering only the evidence and inferences that support the finding and disregarding all evidence and inferences to the contrary. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). If more than a scintilla of evidence exists to support the finding of fact, the legal sufficiency challenge will not prevail. *Graham Cent. Station, Inc.*, 442 S.W.3d at 263.

In reviewing a factual sufficiency challenge, we examine all the evidence and set aside the finding only if the evidence is so weak or the finding so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Zieben v. Platt*, 786 S.W.2d 797, 799 (Tex. App.—Houston [14th Dist.] 1990, no writ); *see also Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

We review the trial court's conclusions of law de novo. *BMC Software Belg., N.V.*, 83 S.W.3d at 794. An appellant may not challenge the trial court's conclusions of law for factual insufficiency, but it may challenge the legal conclusions drawn from the facts to determine their correctness. *Id*. If the reviewing court determines a conclusion of law is erroneous but the trial court rendered the proper judgment, the erroneous conclusion of law does not require reversal. *Id*.

Analysis and Discussion

*Issue One*

In its first issue, Infinity contends the trial court erred in finding that a cause of action under section 601.052 of the Texas Business and Commerce Code was tried by consent.[3] *See* TEX. BUS. & COM. CODE ANN. § 601.052. Specifically, Infinity challenges the following findings of fact and conclusions of law:

Findings of Fact:

(13) The [Strileys] did not receive notice in compliance with Texas Business & Commerce Code § 601.052.

Conclusions of Law:

(23) The [Strileys] did not plead any cause of action arising under Section 601 of the Texas Business and Commerce Code. The [Strileys] did not identify any such cause of action, any evidence supporting such cause of action, or disclose any damages arising from any such violation in response to numerous written discovery requests. However, the issue was first raised by the testimony of [Infinity's] representative with no objection from either party and was, therefore, tried by consent.

(24) Because there is evidence that [Infinity] violated Section 601 of the Texas Bus. & Comm. Code, evidence of reasonable and necessary attorney's fees, if any, should be allowed.

---

[3] This section is commonly referred to as the Home Solicitation Act. It is designed to protect residential occupants from high pressure door-to-door salesmen and to allow a "cooling off" period within which the consumer can rescind a sales contract. *See Langston v. Brewer,* 649 S.W.2d 827, 829 (Tex. App.—Fort Worth 1983, no pet.); *McDaniel v. Pettigrew,* 536 S.W.2d 611, 614 (Tex. Civ. App.—Dallas 1976, writ ref'd n.r.e.) (involving predecessor to section 601). The Act gives the consumer the right to rescind a home solicitation transaction as defined in the Act; requires certain information to be given to the consumer at the time of the transaction; provides rights, duties, and responsibilities of merchants and consumers involved in such transactions; and provides penalties for violations. TEX. BUS. & COM. CODE ANN. §§ 601.051-601.053. If the Act applies, the merchant is required to provide the consumer notice of a right to cancel the transaction for three days after signing a contract for services. *Id.* § 601.052. The Act operates to render a contract unenforceable if a consumer is not informed of a right to cancel the transaction within three business days from the date of the contact. *Id.* § 601.201. A merchant who violates the Act is liable to the consumer for actual damages suffered by the consumer as a result of the violation, reasonable attorney's fees, and court costs. *Id.* § 601.202.

"The purpose of requesting findings of fact and conclusions of law is to narrow the judgment's bases and thereby reduce the number of contentions the appellant must make on appeal." *Guillory v. Dietrich,* 598 S.W.3d 284, 290 (Tex. App.—Dallas 2020, pet. denied). A trial court is required to make findings of fact on ultimate, controlling, and material issues. *Wade v. Taylor,* 228 S.W.2d 922, 925 (Tex. Civ. App.—Amarillo 1950, no writ).

An appellate court reviews a trial court's conclusions of law de novo. If the reviewing court determines that the trial court rendered the proper judgment, the erroneous conclusion of law does not require reversal. *BMC Software, Belg., N.V.,* 83 S.W.3d at 794.

The issue of notice required by section 601.052 was not raised in the trial court until the Strileys filed their proposed findings of fact. As noted by the trial court, the Strileys did not plead a cause of action arising under section 601 of the Texas Business and Commerce Code or disclose any evidence of damages. While the court found there was testimony by Infinity's representative that the Strileys did not receive notice in compliance with section 601.052, the trial court also found that the "sale of the roof to the [Strileys] was enforceable."[4] Most importantly, the trial court did not grant any relief on the failure to give notice. A consequence of failing to give notice pursuant to section 601.052 would be to entitle the Strileys to an award of attorney's fees. TEX. BUS. & COM. CODE ANN. § 601.202. However, the trial court did not award any attorney's fees and the Strileys did not appeal that portion of the trial court's judgment.

---

[4] Finding of fact (14).

9

We conclude that finding of fact (13) was not an ultimate fact necessary for the court's judgment. *See Pakdimounivong v. City of Arlington*, 219 S.W.3d 401, 412 (Tex. App.—Fort Worth 2006, pet. denied) (ultimate fact is one that would have direct effect on judgment).

As we will discuss in detail in issue two, we conclude the trial court made findings that control the case under a correct legal interpretation, an oral contract for the replacement of the roof. As such, the trial court rendered the proper judgment and the challenged finding and conclusions of law do not support reversal. *See BMC Software Belg., N.V.,* 83 S.W.3d at 794 (if reviewing court determines conclusion of law is erroneous, but trial court rendered proper judgment, erroneous conclusion of law does not require reversal). We overrule issue one.

*Issue Two*

In issue two, Infinity contends the trial court erred in denying its breach of contract, conversion, unjust enrichment, and quantum meruit claims. We address each claim in turn beginning with breach of contract.

Breach of Contract

Infinity had the burden of proof on its breach of contract claim. The elements of a breach of contract claim are: (1) the existence of a valid contract; (2) the plaintiff performed or tendered performance as the contract required; (3) the defendant breached the contract by failing to perform or tender performance as the contract required; and (4) the plaintiff sustained damages as a result of the breach. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 502 n.21 (Tex. 2018). The existence of an oral contract may

10

be proved by circumstantial or direct evidence. *Domingo v. Mitchell,* 257 S.W.3d 34, 39 (Tex. App.—Amarillo 2008, pet. denied). Courts consider the communications between the parties and the acts and circumstances surrounding those communications when determining the existence of an oral contract. *Id.*

The trial court made the following pertinent findings of fact regarding the breach of contract claim:

> (1) [Infinity] entered into an agreement with [the Strileys] to replace the roof on [the Strileys'] house . . . ."
>
> (2) [Infinity] completed the project in accordance with the agreement.
>
> (3) [The Strileys] remitted full payment in accordance with the agreement.
>
> (12) Alternatively, there is evidence to support an oral contract existed.
>
> (17) [The Strileys] have paid the full amount due and owing to [Infinity].

By this issue, Infinity argues findings (4) and (17) are against the great weight and preponderance of the evidence. Infinity's contention is that the Strileys breached the contract because they received payments totaling $27,496 from the insurance company for the claim at issue, and only remitted $12,919.05 to Infinity.

In this case, the evidence is conflicting as to the amount that Infinity would be compensated for the roof. Infinity presented testimony that there was an agreement that they would be paid by the insurance coverage that the Strileys had in place; Infinity's practice was to utilize written contracts specifying that they would receive the insurance proceeds; industry standards support the recovery of the insurance proceeds; the

11

contract in this case was signed and lost; no written estimate was provided to the Strileys because Infinity's contracts are contingency contracts with the insurance company;[5] claim correspondence provided to the Strileys indicated that the replacement cost was $29,616; and the borrower restoration affidavit established the claim damages in the amount of $24,889.11.[6]  In contrast, the Strileys testified that they never saw a contract or were asked to sign a contract; Infinity did not provide a quote for the cost of the new roof; Infinity did not discuss the price of the roof with them; whatever the cost of the roof was, it was going to be paid for by their insurance coverage; they were not required to pay anything out of pocket for the roof repair; the negotiations were rushed; Infinity agreed to accept the first insurance check as payment in full; the agreement included not only replacement of the roof, but repair of the windows, eaves, and fascia; the second check represented the diminished value and depreciation of the Strileys' home; the second check was to pay for the damages to the fascia, soffit, and windows; and Infinity refused to honor its promise to repair the fascia, soffit, and windows.

The conflict in the testimony was resolved by the trial court in the Strileys' favor.[7]

When all other elements of a contract have been met, a court may imply a reasonable price.  *Bendalin v. Delgado,* 406 S.W.2d 897, 900 (Tex. 1966); *Domingo,* 257 S.W.3d at 40.  It is undisputed that Infinity accepted the first insurance payment of $12,919.05 and began work the day after receiving the payment.  The trial court impliedly

---

[5] No contract between Infinity and the insurance company was introduced at trial.

[6] The borrower restoration affidavit was signed by Jeff and Tracy.  The affidavit was not offered or admitted into evidence.  Jeff and Tracy testified that they understood the amount in the affidavit included repairs to the windows, eaves, and fascia, as promised by Infinity.

[7] The trial court issued findings that Infinity's testimony was not credible, and the Strileys' testimony was credible.

12

found the parties agreed to that amount and Infinity was entitled to a total payment of $12,919.05 under the agreement. *See* TEX. R. CIV. P. 299; *Vickery v. Comm'n for Lawyer Discipline,* 5 S.W.3d 241, 252 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (when trial court makes findings of fact but inadvertently omits essential element of ground of recovery or defense, presumption of validity of judgments will supply omitted element by implication).

On this record, we cannot say that the great weight and preponderance of the evidence or the evidence as a matter of law compels the conclusion that the parties agreed that Infinity would recover the entirety of the insurance proceeds received by the Strileys. We conclude the trial court's findings that the Strileys remitted full payment in accordance with the agreement and that they paid the full amount due and owing to Infinity was not so against the great weight and preponderance of the evidence as to be manifestly unjust.

Conversion

We next address Infinity's assertion that the trial court improperly denied its conversion claim. Conversion is the wrongful exercise of dominion and control over the personal property of another to the exclusion of, or inconsistent with, the owner's rights. *Waisath v. Lack's Stores, Inc.,* 474 S.W.2d 444, 447 (Tex. 1971). To establish a claim for conversion, the plaintiff must prove that (1) he owned or had possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, his rights as an owner; (3) he demanded return of the property; and (4) the defendant refused to return the property. *Burns v. Rochon,* 190 S.W.3d 263, 268

13

(Tex. App.—Houston [1st Dist.] 2006, no pet.).  If, however, the defendant proves that he has superior title or that he is entitled to the property pursuant to an agreement, the plaintiff cannot maintain the action for conversion.  *See Enduro Oil Co. v. Parish & Ellison*, 834 S.W.2d 547, 549 (Tex. App.—Houston [14th Dist.] 1992, writ denied).  Infinity argues that the Strileys "received the labor and materials required to re-roof their house, and have not remitted full payment, for which they have caused damage to [Infinity] in the amount of unpaid labor and materials provided."  We have already addressed the evidence supporting the parties' agreement above.  Further, Infinity has failed to direct us to any evidence in the record that the Strileys "unlawfully and without authorization assumed and exercised control" over Infinity's property or that Infinity demanded and was refused the return of the property.  For these reasons, the evidence supports the trial court's conclusion that Infinity failed to prove a claim for conversion.

Equitable Claims

Next, Infinity asserts it is entitled to recover on the equitable theories of quantum meruit and unjust enrichment.  Quantum meruit is an equitable remedy based on an implied agreement to pay for benefits received.  *Vortt Exploration Co., Inc. v. Chevron U.S.A., Inc.,* 787 S.W.2d 942, 944 (Tex. 1990).  Unjust enrichment is an equitable theory of recovery available when a party has obtained benefit from another by fraud, duress, or the taking of unfair advantage, and the receipt of those benefits is not governed by contract.  *Mason v. Mason,* No. 07-12-00007-CV, 2014 Tex. App. LEXIS 413, at *13-14 (Tex. App.—Amarillo Jan. 13, 2014, no pet.) (mem. op.) (citing *Heldenfels Bros., Inc.  v. City of Corpus Christi,* 832 S.W.2d 39, 41 (Tex. 1992) and *Lone Star Steel Co. v. Scott,* 759 S.W.2d 144, 154 (Tex. App.—Texarkana 1988, writ denied)).

14

As detailed above, there is significant evidence in the record to support the trial court's finding of an oral contract and full payment of the contract terms. Here, Infinity sued for breach of contract and did not contend that any work or services were provided outside the agreement of the parties. The trial court found that an agreement existed between the parties and that the Strileys remitted full payment in accordance with the agreement. Infinity presented no evidence that it provided any materials or services outside the scope of the agreement. Having found that a contract existed and that the Strileys paid Infinity in full, Infinity is precluded from recovering damages, under equitable theories, for materials or services which were the subject of a contract. *See Fitzgerald v. Water Rock Outdoors, LLC,* 536 S.W.3d 112, 117 (Tex. App.—Amarillo 2017, pet. denied) (citing *Fortune Prod. Co. v. Conoco, Inc.,* 52 S.W.3d 671, 684 (Tex. 2000), as providing "Generally speaking, when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory . . . ."); *see also Iron Mountain Bison Ranch, Inc. v. Easley Trailer Mfg., Inc.,* 42 S.W.3d 149, 160 (Tex. App.—Amarillo 2000, no pet.) (recovery is not available under quantum meruit if an express contract covers services or materials for which claimant seeks recovery).

We overrule issue two in its entirety.

Conclusion

Having overruled all issues raised by Infinity, we affirm the judgment of the trial court.


Judy C. Parker
Justice

15